HELEN STITH, Appellant, v. J. J. NEWBERRY COMPANY, Appellant, and W. W. JOHNSON.—79 S. W. (2d) 447.

Division One, February 8, 1935.

*Roy Hamlin* and *Ben Ely* for appellant.

*Rendlen, White & Rendlen* for Stith.

474

STURGIS, C.—This case comes to the writer on a rehearing granted on the court's own motion for reasons hereafter mentioned. ■ The first opinion, concurred in by all the court, was written by Commissioner HYDE and his statement of the case with slight modifications is now adopted, with the preliminary observation that the fact that both parties to a case take an appeal to this court does not make two cases in this court. It is but one case regardless of there being cross-appeals or appeals by any number of parties. Any party to a suit aggrieved by the judgment may take an appeal in that case (Sec. 1018, R. S. 1929), and when both parties appeal, Section 1032, Revised Statutes 1929, provides for only one transcript or abstract of the record in the appellate court and the terms on which the party not furnishing and paying for it in the first instance may have the benefit thereof and be heard thereon. There is but one case on appeal, though several appellants, and no need of a separate docketing or consolidation of such appeals.

This is an action for personal injuries, from the result of which both plaintiff and defendant Newberry Company appeal. Plaintiff's injuries were caused by a fall on ice which had accumulated on the sidewalk in front of the store of the defendant Newberry Company in Hannibal. The trial court, at the close of all the evidence, sustained a demurrer to the evidence as to defendant Johnson, the manager of the store, and from the court's action relative thereto plaintiff appeals. Plaintiff had a verdict of the jury and judgment against defendant Newberry Company for $10,000, from which it appeals.

The petition herein charges that defendant Newberry Company operated a merchandise establishment and store at Hannibal, Missouri, with officers, agents, and representatives in charge thereof, and that said company and its officers and agents, including defendant Johnson, in charge of and operating the same for it were *joint tort-feasors* in the wrong herein complained of. Plaintiff's theory was that snow and ice collected on both an awning and the protective structure above it, which melted on the day of her injury, so that water dripped onto the sidewalk and froze, forming a strip of ice across it, because of which she fell to her injury. This negligence is specifically charged in plaintiff's petition as follows:

"Plaintiff states that long before the accident and injuries herein complained of, and at the time thereof, the defendants had wrongfully and carelessly and negligently maintained and operated on and at the front of the store building so occupied by them and over and adjoining the sidewalk leading past the said J. J. Newberry store, at a place constantly used by many pedestrians, an awning extending across the entire front of said store building and which awning during the season of the year when the accident and injury herein complained of occurred, and at other times, was designed to

be drawn or rolled up so that the same would lie close to the front of the building, and when properly rolled up was intended to fit into and under a boxed-up construction which protected same from the weather and was intended to prevent the accumulation of ice, snow and water in the folds of said awning.

"Plaintiff states that at and prior to the time of her injury hereinafter described said awning was negligently, carelessly and wrongfully operated and rolled up by defendants so that the folds thereof were not covered or protected by said super-structure hereinbefore mentioned and so maintained that snow, ice and water did collect therein and the cloth of said awning was allowed to slack or be so placed that folds or pockets were formed and that said folds and pockets had become and were at the time receptacles for the accumulation of snow, ice and water, and that they then and for a long time before had contained such accumulations; and further plaintiff says that said awning and box super-structure was so negligently, unskillfully and carelessly maintained, operated and used by defendants that rain, ice and snow were negligently and carelessly permitted by defendants to form and remain thereon and also in, on and about the awning, and to thaw, and run down upon said sidewalk in front of said building and freeze and form dangerous conditions and obstructions thereon to pedestrians. . . .

"Plaintiff states that on or about Saturday evening at 9:30 p. m., January 25th, 1930, at a time when many people were passing in front of said J. J. Newberry store, she, the plaintiff, was lawfully using said sidewalk at the place herein described and was passing over said place in company with members of her family and was carrying bundles and articles in her arms, having with her her small child, and was at said time and place proceeding along in a prudent and careful manner, in the exercise of due and proper care on her part, unaware and unwarned of the dangerous condition in and upon said sidewalk when she stepped upon said slippery and dangerous ice and instantly she was caused to slip and fall to the concrete sidewalk with force and violence."

Defendants' separate answers stated a general denial, that the walk was under the exclusive control of the city, and pleaded contributory negligence of plaintiff. The evidence showed that plaintiff, with her husband and five-year-old son, were walking along the sidewalk in front of defendant's store, Saturday night, January 25, 1930; that there were many other people on the streets; that although there was snow and ice in the street the walks were generally clean; and that plaintiff was walking along naturally, looking where she was going and glancing in at defendant's store window when she fell and was injured. She said that after she had fallen she noticed there was a strip of ice two to two and one-half feet wide clear across the walk from the building to the curb. Plaintiff was corroborated by

other witnesses as to such strip of ice extending all the way across the sidewalk, which was twelve feet wide. Defendant's store was in the principal business district of Hannibal and the walk was well lighted both by street lights and lights in defendant's windows. The 25th day of January, 1930, was clear, but there was about six inches of snow on the ground from previous snowfalls. There had been heavy snows earlier in January and the temperature had been as as low as seventeen degrees below zero. On the 20th it snowed all day and there was nine and one-half inches of snow on the ground. There was a light snow (about one-half inch) on the 21st. On January 21st, 22nd and 23rd, temperatures below zero were registered. On January 24th the highest was twenty-nine degrees above zero. On January 25th the early morning temperature was fifteen degrees above zero; from ten A. M. to five P. M., it was twenty degrees or more, the highest being twenty-three degrees from two to three P. M.; by nine P. M. the temperature had dropped to ten degrees above zero. There was "a little sift of snow" (.02 inch) that evening.

The box-like hood or casing over the awning extended across the entire front of the building and projected from the building about ten inches. It had no gutter or groove to carry away water from it and its surface was a continuous straight incline away from the building, except for a small depression near the outer edge; it had a fall of one inch; and the drainage from it was directly upon the sidewalk or upon the awning if it was not completely rolled up under it. The awning rolled up on a roller, which was operated by a crank; when completely rolled up, the awning was entirely under the casing. Plaintiff, however, had evidence tending to show that prior to plaintiff's injury at various times during the month of January, 1930, the awning was noticed not entirely rolled up under the casing, but extending six or eight inches or more out from under the outside edge of it; that there was snow and ice lodged on both the awning and casing; and that water was seen dripping on the sidewalk from melting snow and ice on the awning and structure above it.

There was not much specific evidence as to these conditions on January 25th. A police officer said: "I passed up and down there on the twenty-fifth. There was snow and ice on the street. I noticed water dripping from the awning or cornice. This water fell on the sidewalk and froze there *in a space about one foot or one and one-half feet long*. I noticed a similar condition on prior occasions. . . . If the awning is pulled up properly, it is clear under the hood, but if not, it protrudes. I cannot say as to its condition on January twenty-fifth, 1930; . . . I have seen that (water) there several times. . . . In the afternoon ice was there from dripping off the awning. . . . *Water was dripping off the awning and onto*

*the sidewalk.* Water ran off onto the awning and then onto the sidewalk." Plaintiff's mother testified: "I went into the Newberry store that afternoon. I noticed water *dripping down on the sidewalk and running across the walk.* . . . I did not see where this water was coming from, just saw it was dripping down. When I saw it the water was not freezing. . . . I saw no snow or ice in front of the Newberry building but I saw the water across the sidewalk. . . . Mr. Johnson (a defendant) said that he was awfully sorry that it had happened; that the snow and ice had collected on the awning and melted and run down along the sidewalk and they had failed to clear it off." Plaintiff testified that Brown, one of defendant's employees, said: "They just failed to clean that up, that melted that afternoon and dripped down and froze since it got colder. . . . That he was sorry they neglected to clean that off that came from the awning." Defendant's employees testified that the only ice on the sidewalk was a few streaks toward the curb formed by snow or sleet which fell there; that since the store faced east the awning was customarily put down in the morning and rolled up at noon. They said the awning was completely rolled up on the day of the accident and had no snow or ice on it, but they seem to have based this on the general custom, and not upon any independent recollection of what was done that day or which one of them did it. Defendant Johnson, however, testified: "On the twenty-fifth of January the awning was up from eight o'clock in the morning until twelve noon. On that day there was no snow and ice on the awning. The awning was rolled up at noon. . . . At the time we closed the store at 10:30 there was no ice on the leveled part of the sidewalk but a little on the extreme edge toward the curb."

On this condition of the pleadings and evidence, both parties having rested, the defendant W. W. Johnson asked and the court marked as given and so announced, an instruction in the nature of a demurrer to the evidence and directing the jury that "under the pleadings, the law and the evidence the verdict must be for the defendant W. W. Johnson." Such instruction was not read to the jury or acted on by it for the reason that plaintiff's attorney announced that "in view of the giving of defendant's instruction in the nature of a demurrer on behalf of defendant Johnson, plaintiff takes an involuntary nonsuit as to such defendant." A like demurrer to the evidence was asked at the same time by defendant Newberry Company and was overruled. The above is shown by the bill of exceptions; and the certified copy of the judgment filed in this court shows that on the third day of the trial, January 16, 1931, all the evidence being heard, defendant Johnson tenders an instruction "in the form of a demurrer or directed verdict, and after said instruction as to W. W. Johnson is given" and "before the jury re-

turns a verdict, the plaintiff takes an involuntary nonsuit as to defendant W. W. Johnson, with leave to move to set the same aside by reason of the giving of the above instruction. The separate demurrer as to defendant J. J. Newberry is overruled.'' The defendant Newberry Company then filed a petition and bound for removal of the case to the United States District Court on the theory that it was then the sole defendant, which removal was denied. The case was submitted to the jury on instructions given on behalf of the plaintiff and the defendant Newberry Company. One of the instructions given for plaintiff directed the jury that if the finding was for plaintiff to find ''against the defendant Newberry Company and assess plaintiff's damages at the sum of ——— Dollars.'' The verdict of the jury followed this form. The certified copy of the judgment from which we have made the foregoing extracts also recites the return into court of the jury's verdict for plaintiff and against the Newberry Company and makes the formal recital that plaintiff have and recover of defendant J. J. Newberry Company the sum of $10,000, etc. (These details are stated because of the suggestion that there is no final judgment disposing of the case as to defendant W. W. Johnson.) The record then shows that within four days the defendant Newberry Company filed its motions for new trial and in arrest of judgment, which were in due course overruled. These motions say nothing about defendant Johnson and proceed as though he had never been a defendant. The same is true of defendant Newberry Company's affidavit for appeal and the order granting same; also of the bond for appeal.

However, on the same day that defendant Newberry Company filed its motions for new trial and in arrest of judgment, January 20, 1931, the plaintiff filed her motion to set aside her involuntary nonsuit as to defendant Johnson taken, as we have seen, after the evidence was all in and the court announced his sustension of the demurrer thereto. This motion was overruled and exceptions saved. Plaintiff also then filed affidavit for and was granted an appeal.

■ Defendant Newberry Company perfected its appeal to this court and filed its abstract of the record and brief as if it were the only appellant and with only incidental reference to defendant Johnson. Its record and brief are in the case of ''Helen Stith, respondent. v. J. J. Newberry Company, appellant,'' and its statement, assignment of errors, and points and authorities relate wholly to alleged errors committed during the trial as to the Newberry Company. Plaintiff, by supplemental abstract of the record, showed that she had appealed from the court's action in sustaining the demurrer to the evidence as to defendant Johnson, and by her brief and argument insisted that no error was committed as to defendant Newberry Company, but that the court erred in sustaining the demurrer to the evidence as to defendant Johnson. She asked that the judg-

ment against Newberry Company be affirmed in its entirety and that she be awarded a new trial as to defendant Johnson, something this court could not do. [Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S. W. (2d) 543; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559.]

Such was the status of this case when it was first argued and submitted here and was assigned to Commissioner HYDE. His opinion, adopted by the court, after the statement of the facts as to the merits heretofore noted, continues:

█ Defendant Newberry on its appeal contends that the court erred in overruling its demurrer to the evidence. It argues mainly the proposition that plaintiff was guilty of contributory negligence as a matter of law. We think that this was clearly for the jury. The ice was a narrow strip across the sidewalk at a place where it would hardly be expected. Plaintiff was walking on a wide sidewalk which appeared to be clear of ice and snow, particularly the inside part where she was walking. She saw many other people similarly walking on this sidewalk. Of course, it is the duty of every pedestrian to keep a general lookout so as to observe obstructions or dangers, to use his senses, and to see what is clearly before his eyes. There was, however, nothing so unusual under these circumstances in the conduct of plaintiff, in walking along on Saturday night in a crowded business district looking into storekeepers' display windows, that it would be contributory negligence as a matter of law. (For cases covering the general subject of contributory negligence in falling on slippery sidewalks see annotation in 13 American Law Reports, 73; as to instructions, see Gleason v. Texas Co. (Mo.), 46 S. W. (2d) 546.) We hold that it was for the jury to determine whether or not plaintiff was exercising reasonable care under the circumstances.

█ As to the sufficiency of the evidence to show negligence on the part of defendant, there appears to be a closer question. An abutting property owner is not liable for injuries resulting from snow and ice on the sidewalk in front of his premises where it came there by natural causes, either from originally falling there or from drainage there because of the natural drainage of his property. In such cases the responsibility for maintaining a safe condition for travel and the liability for failing to do so is that of the municipality alone. [Norton v. St. Louis, 97 Mo. 537, 11 S. W. 242; St. Louis v. Connecticut Mutual Life Ins. Co., 107 Mo. 92, 17 S. W. 637; Baustian v. Young, 152 Mo. 317, 53 S. W. 921; Reedy v. St. Louis Brewing Assn., 161 Mo. 523, 61 S. W. 859; Ford v. Kansas City, 181 Mo. 137, l. c. 147, 79 S. W. 923, l. c. 926; Russell v. Sincoe Realty Co., 293 Mo. 428, 240 S. W. 147; 43 C. J. 1106, sec. 1869; 13 R. C. L. 415, sec. 341.] This is but one branch of the general rule that the abutting owner is not responsible for the condition of

the sidewalk in the street in front of his property. However, when the abutting property owner for his own private purpose or convenience changes the situation by putting a hole in the sidewalk or an obstruction thereon or building structures projecting over it or otherwise renders its use hazardous by doing anything under, upon or over it, "the law imposes on him the exercise of reasonable care to guard the public from injury." [Reedy v. Brewing Assn., supra.] Therefore, when the abutting property owner constructs or maintains upon his premises a structure which causes an artificial accumulation and discharge of water upon a public sidewalk, which by freezing will make the use of the sidewalk dangerous, he is guilty of negligence and will be held liable for injuries resulting therefrom. Reedy v. St. Louis Brewing Assn., 161 Mo. 523, 61 S. W. 859; Waltemeyer v. Kansas City, 71 Mo. App. 354; Springfield v. Clement. 205 Mo. App. 114, 225 S. W. 120; Beane v. St. Joseph, 211 Mo. App. 200. 240 S. W. 840; Hilliard v. Noe (Mo. App.), 198 S. W. 435; 43 C. J. 1107, sec. 1869; 13 R. C. L. 416, sec. 342; note 58 L. R. A. 321; annotation 34 A. L. R. 409; for cases as to liability for structure similar to the one here, such as awnings, bay windows, or other structures projecting over the sidewalk. [See McConnell v. Bostelmann, 25 N. Y. Supp..390; Macauley v. Schneider, 41 N. Y. Supp. 519; Parsons v. Great Atlantic & Pacific Tea Co., 251 N Y. Supp. 360; Young v. Talcott (Conn.), 159 Atl. 881; Marston v. Phipps, 209 Mass. 552, 95 N. E. 954; Stefani v. Freshman, 232 Mass. 354, 122 N. E. 293; Newnam v. Moran (Md.), 141 Atl. 385; see, also Norville v. Hub Furniture Co., 32 Fed. (2d) 420.] A qualification of this rule which has been made in some cases is that where a change is made or a structure erected, entirely upon the premises of the abutting property owner, in a usual and proper manner and not for the purpose of collecting and discharging water upon the sidewalk, the landowner is not liable even though some water is caused to run upon the sidewalk as a mere incidental result of the condition created. [Sherman v. La Crosse Refining Co. (Wis.), 193 N. W. 1004, 34 A. L. R. 406; Field v. Gowdy (Mass.), 85 N. E. 884, 19 L. R. A. (N. S.) 236; Greenlaw v. Milliken (Me.), 62 Atl. 145; Lightcap v. Lehigh Valley Ry. Co. (N. J.), 101 Atl. 187; Jessup v. Bamford Bros. Mfg. Co. (N. J.), 51 Atl. 147, 58 L. R. A. 329 (which seems to go too far); Moore v. Gadsden (N. Y.), 41 Am. Rep. 352; New Castle v. Kurtz (Pa.), 59 Atl. 989, 69 L. R. A. 488.]

Considering the evidence in this case, in the light of these principles, it would seem unlikely that the awning casing alone was a structure which would collect a sufficient amount of ice, snow and water so as to discharge water therefrom in one spot in any unreasonable amount. There was nothing shown about its construction from which it could be inferred that it would collect and discharge water from it in one place so that it could freeze and form a sheet

of ice clear across the sidewalk. Such drainage as came from it would apparently drip off in small quantities along the whole front of the building. As a practical matter it would seem that in this climate it would be impossible, during certain periods in the winter months, to prevent some drip onto the sidewalk from ice forming on cornices, shutters, window sills, door frames or other slight projections on fronts of buildings. To hold an abutting owner liable for every such drip which freezes on the sidewalk would almost make him an insurer. Ordinary care should certainly not require guttering of such places or scraping away every particle of ice which forms on them. Plaintiff's case, however, is not predicated upon slight drips along the whole front of the building from the superstructure above the awning. Plaintiff did not claim that there was a strip of ice under the casing parallel to the front of the building, but a sheet of ice extending from it clear across the sidewalk in only one place. From the portion of plaintiff's petition above quoted, it will be seen that plaintiff claims that defendant maintained a larger projecting structure than the casing itself by failing to keep the awning properly rolled up under its casing; that the awning and casing together made a structure which accumulated a considerable amount of snow and ice; that snow and ice and water therefrom collected in quantities in folds or slack in the awning in such a manner that it was discharged in one spot and ran down upon and across the sidewalk, in one place, in a continuous stream across the same. In ruling the demurrer, we must apply the rule that the evidence must be viewed in the light most favorable to plaintiff's case and that plaintiff is entitled to the benefit of the most favorable inferences which can be drawn therefrom. Plaintiff's evidence that there was a strip of ice two to two and one-half feet wide all the way across the twelve-foot sidewalk tends to show the existence of the condition of the awning alleged. ''An event may be evidenced circumstantially by a cause or by an effect.'' [McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) l. c. 43.] No other explanation of such a sheet of ice is suggested, except that of plaintiff that the awning was permitted to become in such condition that it collected and discharged a considerable quantity of water in one place. Defendant denied that the strip of ice was there, but that was for the jury. The admissions, which plaintiff and her mother said defendant's employees made, tended to show it. There was also evidence on plaintiff's part that on the day of her injury water was dripping down from the awning onto the sidewalk and running across the walk at one place in a continuous stream; that prior to the day of her injury there was snow and ice on the awning and casing; and that, all the time the snow and sleet was on, water was seen dripping on and running across the sidewalk. The whole evidence at least made a question for the jury as to whether there was

484

ice and snow on the awning and casing and whether the awning was completely rolled back on that particular day.

■ Defendant argues also that there was no evidence of notice of the condition. However, the evidence tends to show a condition of the awning, which existed by reason of the acts of defendant's employees in unrolling it and placing it in an improper position. It also tends to show that such a condition would have caused snow and ice to collect thereon and water, from the melting thereof, to be discharged upon one place on the sidewalk so as to make a stream which would freeze into a solid sheet of ice all the way across it. The evidence having tended to show that such a condition of the awning was created by defendant's acts, it was for the jury, if they believed it, to say whether or not defendant ever remedied it prior to the accident. [See Davis v. Buck's Stove & Range Co., 329 Mo. 1177, 49 S. W. (2d) 47.] Under the evidence the jury was warranted in believing that the defendant did not do so. The jury also had at least the right to say whether or not defendant should have reasonably anticipated such a result from placing it in such a position. [McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693.] As to whether or not the evidence shows that defendants knew, or in the exercise of ordinary care could have known, that the awning was discharging water upon the sidewalk in such a manner on that day, if that be necessary under these circumstances, there was evidence of the police officer that water was coming from it and freezing in one place on the sidewalk that afternoon. The evidence also shows that the last heavy snowfall occurred five days before and that there was thawing weather on both January 24th and 25th. We hold that the demurrer to the evidence of defendant Newberry was properly overruled.

This portion of the opinion we again approve. There were other alleged errors arising during the trial of the case on its merits complained of by defendant Newberry Company which we have examined but first thought and still think are not reversible.

■ The opinion of Commissioner HYDE considers at length and with learned ability the question raised by plaintiff's appeal, if properly before us, as to the liability of defendant Johnson as a joint tort-feasor and the court's error in sustaining the demurrer to the evidence and discharging him. Our first opinion holds, and we think properly so, on the authority of Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929; State ex rel. Hancock v. Falkenhainer, 316 Mo. 651, 657, 291 S. W. 466; Carson v. Quinn, 127 Mo. App. 525, 105 S. W. 1088, and many other cases, that as it was the duty of defendant Johnson as manager of this store, both to his employer and to the public, to see to it that the awning over the sidewalk was kept and operated in a reasonably safe condition, he could not escape liability here on the ground that

his negligence is one of nonfeasance instead of misfeasance. His position as manager of the store and business placed upon him the responsibility of properly handling and maintaining the awning. He had authority over the other employees and should have kept the awning in a position and condition not likely to cause harm to pedestrians on the sidewalk either by his own efforts or through employees who were there to act under his orders. His duty in that respect was the same as that of his employer. "The person having charge of the building, whether as owner or agent or servant, ought to be responsible to third persons, on the theory that a duty to use proper care arises from such control." [7 Labatt's Master and Servant (2 Ed.), p. 7974, sec. 2586.]

What we have here said as to the joint liability of Johnson, a resident of this State, and the Newberry Company, a nonresident, joined as codefendants, is a complete answer to the contention that when the case was disposed of as to Johnson by sustaining his demurrer to the evidence, the defendant Newberry Company was entitled to a removal of the case to the Federal Court. Certainly if Johnson is legally and in fact jointly liable with the Newberry Company, he was rightly made a codefendant, and the fact that the trial court erroneously discharged him against plaintiff's will and over her protest would not confer on defendant Newberry Company a right to remove the case to the Federal Court. [Craig v. Kansas City Terminal Ry. Co., 271 Mo. 516, 197 S. W. 141; Whitcomb v. Smithson, 175 U. S. 635.] The joinder of the two defendants could not, under our present holding, have been merely colorable and with a fraudulent intent to prevent a removal of the case, and the cases cited along that line are not applicable. The taking of an involuntary nonsuit by plaintiff as to defendant Johnson, being forced to do so by the court's action in sustaining a demurrer to the evidence as to him, was not such a voluntary discharge of Johnson from the case as to make the case a removable one. [Kettlehake v. American Car & Foundry Co., 171 Mo. App. 528, 542, 153 S. W. 552, affirmed in American Car & Foundry Co. v. Kettelhake, 236 U. S. 311; Kansas City Suburban Belt Ry. Co. v. Herman, 187 U. S. 63.]

The question, however, of there being error in the action of the trial court in sustaining defendant Johnson's demurrer to the evidence and discharging him from liability, thereby forcing, in a legal sense, the plaintiff to take a nonsuit as to him with leave, is not properly before this court for review for the reason that the plaintiff's attempted appeal from the court's order refusing to set aside such nonsuit is conceded to be a nullity. What we have said, therefore, as to the liability or nonliability of defendant Johnson may throw some light on other questions properly before us by way of argument, but that is all. In Bonanomi v. Purcell, 287 Mo. 436, 445, 230 S. W. 120, the court sustained a demurrer to plaintiff's

evidence as to both of two defendants in a tort action and plaintiff took an involuntary nonsuit as to both with leave, etc. On plaintiff's motion to set aside the nonsuit the court granted it as to one defendant and overruled it as to the other. This court held that, such motion being in effect a motion for new trial, an appeal would properly lie from the order sustaining such motion as to the one defendant but not from the order overruling it as to the other. Such is the effect of our statute, Section 1018, Revised Statutes 1929. The court there points out that the order granting the appeal specifically stated that it was "from the order overruling his motion for new trial and to set aside the involuntary nonsuit as to defendant," naming him, and further said: "No final judgment having been entered in the cause it is still pending in the court below, awaiting the determination" of the other appeal. This court there entered its order dismissing plaintiff's appeal. So in Bonfils v. Martin's Food Service Co., 299 Mo. 500, 253 S. W. 982, the court overruled defendant's motion in arrest of judgment and entered a final judgment, but the defendant specifically appealed from "the order overruling the motion in arrest of judgment." This court there entered an order dismissing the appeal. See, also, State ex rel. v. Trimble, 333 Mo. 51, 62 S. W. (2d) 473, where this court discusses the cases on this subject and holds that no appeal lies from an order overruling a motion for new trial, in arrest of judgment, or to set aside an involuntary nonsuit, where the record shows specifically that the appeal is from such order only. ▓ It is also held in the last-cited case that no order granting an appeal is valid or confers jurisdiction on the appellate court unless supported by a sufficient affidavit, and so the affidavit is an important factor. [Pence v. Kansas City Laundry Service Co., 332 Mo. 930, 59 S. W. (2d) 633.] We do not have plaintiff's affidavit for appeal before us as it is merely stipulated here that plaintiff's motion to set aside her involuntary nonsuit was overruled on February 27, 1931, exceptions saved, affidavit for appeal filed, and appeal was duly allowed to the Supreme Court. This question was in no way raised by either party when the case was first argued and submitted, but as all the cases hold that this question goes to the jurisdiction of the appellate court, this court raised the question *sua sponte*, as it was bound to do. That the parties might be heard on this question was one of the reasons for granting this rehearing. We need not pursue this point further as defendant Newberry Company is obviously not interested in what becomes of plaintiff's appeal as to defendant Johnson unless it helps it in some way in getting a new trial, and such defendant ignores the question on the reargument. Defendant Johnson has never appeared in this court and obviously does not object to the dismissal of plaintiff's appeal. Plaintiff on the reargument concedes that her attempted appeal is a nullity and consents that it be dismissed. Such order is accordingly made.

■ Defendant Newberry Company makes the further assignment that "the court erred in admitting evidence concerning the condition of the awning and superstructure and water dripping from the same at a period long after the date of the alleged accident." Most of this evidence was offered to show that snow and ice would melt in the afternoon of a sunny day at a temperature of twenty-three degrees above zero. It happened that on one of the days of the trial, which was a year after the accident, the temperature ranged from six degrees above zero in the morning to twenty-three degrees above zero in the afternoon. Some of plaintiff's witnesses testified that they saw snow melting on that day during the trial. In this connection some of them were also allowed to testify that they saw the awning protruding six or eight inches from the casing with snow on it after the date of the accident. An objection was made on behalf of defendant to this testimony as to subsequent condition which was overruled and defendant saves exceptions thereto. However, at the close of all of the evidence the court suggested that if defendant's objection was renewed it would sustain it as to all testimony relating to the condition of the awning and other surroundings of the Newberry store at a date subsequent to January 25, 1930. Defendant Newberry Company did renew the objection to all of such testimony and the court sustained its objection and orally directed the jury to disregard all of such evidence. There was no further objection made on the part of defendant nor did it make any request to have the jury discharged. The court, however, of its own motion, also gave the following written instruction:

"The court instructs the jury that all the evidence of the condition of the awning and superstructure after the date of plaintiff's alleged fall is withdrawn from the consideration of the jury, and you will disregard such in arriving at your verdict."

Under these circumstances whatever error there may have been in admitting this testimony was cured by the withdrawal instruction [Harrison v. Kansas City Electric Light Co., 195 Mo. 606, l. c. 635, 93 S. W. 951; Snyder v. American Car & Foundry Co. (Mo.), 14 S W. (2d) 603; Consolidated School District v. West Missouri Power Co., 329 Mo. 690, 46 S. W. (2d) 174.]

■ Defendant Newberry Company makes the further assignment that the court erred in entering judgment against it for ten thousand dollars. The jury did not write the amount of the verdict in words, but set it down in figures. The figures were a dollar mark, a one, after which was placed a large cipher, after which there was a large dot or period. These figures were followed by three smaller ciphers which were above a line extending from the bottom. Defendant contends that this is a verdict for ten dollars, on the theory that the dot should be construed as a decimal point and that adding ciphers after a decimal point, regardless of the number of

ciphers added, does not increase the value of the figure. Defendant also says that if it cannot be construed as a verdict for ten dollars, it is so ambiguous and uncertain that it should be set aside. The record, however, showed "That said verdict was read by the court to the jury as ten thousand dollars and the jury were asked whether that was their verdict and they responded that it was."

An affidavit was also filed, made by all the jurors, stating that the amount of their verdict was ten thousand dollars, which affidavit was filed two days after the filing of defendant's motions for new trial and in arrest of judgment and before said motions were passed upon by the court. It has been held that such affidavits are proper because they support and do not impeach the verdict. [Hays v. Hogan, 273 Mo. 1, 200 S. W. 286, and cases cited; Jordan v. St. Joseph Ry., L., H. & P. Co., 335 Mo. 319, 329, 73 S. W. (2d) 205.] We hold there is no merit in this assignment.

The point on which we held in our first opinion that the judgment must be reversed and the cause remanded is that this case as against the Newberry Company is based solely on the doctrine of *respondeat superior* and both the master and servant are sued and there can be no judgment against that company as master without a judgment against the servant Johnson. We based our ruling on McGinnis v. Railroad, 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880; Whiteaker v. Railroad, 252 Mo. 438, 160 S. W. 1009; Michely v. Mississippi, etc., Co., 221 Mo. App. 205, 299 S. W. 830, to which may be added Wade v. Campbell and Coates Hotel Co., 211 Mo. App. 274, 279, 243 S. W. 248; Vest v. S. S. Kresge Co. (Mo. App.), 213 S. W. 165, 167. Where the actionable negligence or tort is that of the servant only and the employer is liable solely because of his being such and therefore liable for the negligence or torts of his servant committed in the line of his duties as servant, and the injured party sues both, and in a trial on the merits the verdict is for the servant and against the master, such verdict against the master is a nullity and will not support a judgment thereon. Such is the law in this State and generally. 39 C. J. 1367; 18 R. C. L. 776; 15 R. C. L. 1026; Southern Ry. Co. v. Harbin, 135 Ga. 122, 68 S. E. 1103, 21 A. & E. Ann. Cas. 1011. and note; Hobbs v. Illinois Cent. Railroad Co., 171 Iowa, 624. 152 N. W. 40, L. R. A. 1917E, 1023, and note, where it is said that the decisions "generally sustain the rule stated therein that a verdict exonerating the servant in an action brought against the master and the servant for personal injuries caused *solely* by the alleged negligence or misfeasance of *that* servant requires an acquittal of the master also." Still later cases will be found in 75 American Law Reports, 1189, and note. If this doctrine is applicable here is it not true that this judgment should be reversed absolutely instead of the case being reversed and remanded? The law on this

subject is well stated in 39 Corpus Juris, 1367, section 1602, thus: "Where a master and servant are sued jointly in an action based *solely* on the tortious conduct of the servant, and the servant is acquitted, there can be no recovery against the master. A verdict against the master and acquitting the servant is equivalent to a finding that *no cause of action exists* and will not support a judgment against the master; and such a verdict should be set aside or judgment for the master entered notwithstanding the verdict. So also if an action against master and servant is based solely on the theory of *respondeat superior* and the court *directs a verdict for the servant*, it is error to submit the issue of the negligence of the master." It is there pointed out that unless the liability of the master is based *solely* on the negligence of the *particular* servant who is sued and acquitted, that is if the master is guilty of negligence distinct from the negligence or tort of the servant, though combining with it, or the injury is due in whole or in part to the negligence of other servants than the one sued, then an acquittal of the servant sued does not nullify the verdict and judgment may go against the master. These distinctions are frequently pointed out in the cases on this subject. Thus in the McGinnis case the suit was against the railroad, the master, and French, its servant, and the court said: "If defendant is liable at all under the pleadings and evidence it is liable by reason of the negligence of French, and not otherwise. It is a travesty upon the law to say that French has been guilty of no negligence in this case, and by the same verdict and judgment say the defendant is guilty of negligence, through French, its servant, for which it is liable and should pay damages. . . . In the case at bar every element of negligence was eliminated from the case by plaintiff's testimony, except the alleged negligence of the servant French. This negligence consisted of negligently performing a duty in the doing of a lawful act. It is a case where the master is entitled to contribution from the servant. . . . We are firmly of the opinion that in cases where the right to recover is dependent *solely* upon the doctrine of *respondeat superior,* and there is a finding that the servant, through whose negligence the master is attempted to be held liable, has not been negligent, as was true in the case in hand, there should be no judgment against the master. The verdict in this case is a monstrosity. The jury say French was guilty of no negligence, yet, in the same breath, say the company was guilty of negligence, although nothing further was done by the company than what it did through French, its servant. Such a verdict is wrong. It is inconsistent and unreasonable." In New Orleans & N. E. Railroad Co. v. Jopes, 142 U. S. 18, 24, 35 L. Ed. 919, the United States Supreme Court said: "If the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity." In

Wade v. Campbell and Coates Hotel Co., supra, the court said: "The liability of the Hotel Company can rest only on the doctrine of *respondeat superior*, and, under the evidence, liability could arise. if at all. solely through Campbell who hired the private detective and authorized him to hunt for the key. Consequently, when the verdict of the jury exonerated the servant, Campbell, it, *ipso facto*, exonerated the master, the Hotel Company."

The rule, we think, is one of logic rather than law. The rule underlying cases of this character is that the master is liable for the negligence of the servant on the ground that one who does a thing by and through another, his servant, does it himself and is responsible for the manner in which it is done. By using reason and common sense in applying this rule of law that if the servant does the master's work in a negligent manner, the master is liable, we must also say that if the servant did not do the work negligently, there is nothing for the master to be liable for. All that the master can do is to prove that the servant was not negligent, and having proved that, as the jury finds, there is no negligence to be imputed to the master. The facts being such that there is no negligence of the master unless there be negligence of the servant, then a finding of no negligence of the servant is a finding of no negligence of the master and the jury cannot award damages against such master. So it is said that the jury cannot be allowed to return an inconsistent, contradictory. self-destructive verdict—a "monstrosity," as Judge GRAVES calls it.

In this case, however, the jury was not guilty of returning any such inconsistent or contradictory verdict. It was not called on or permitted to pass on the question of the servant Johnson's neg-ligence in causing plaintiff's injury in falling on the icy sidewalk. That question was withdrawn from it and the only question submitted to the jury was the negligence of the Newberry Company. and we are now holding that it properly and on sufficient evidence decided that question against that company. There was no error, inconsistency. or contradiction in the jury's verdict. Had the jury been allowed to do so under the proper instructions of the court as to the law, it likely would have found Johnson guilty of neg-ligence, and we are now holding that there was sufficient evidence to take that question to the jury—a matter that we can inquire into on this phase of the case regardless of plaintiff's appeal. The error in this case is not in any inconsistent and contradictory finding by the jury as to Johnson not being negligent and the Newberry Com-pany being negligent, but in the fact that the court, under an er-roneous view of the law perhaps or a misinterpretation of the evi dence, sustained the demurrer to the evidence as to Johnson and refused to submit that question to the jury. The error was in that the court erroneously discharged Johnson from liability as a matter of law. The truth is that when the court sustained the demurrer

to the evidence as to Johnson, the servant, it should have sustained the demurrer as to Newberry Company as master if its liability was wholly dependent on Johnson's negligence, but that was an error of the court and not any inconsistency or contradiction in the jury's verdict. It has been held that a failure of the jury, through inadvertence or mistake of fact or law or otherwise, to return any verdict as to the servant but only one against the master does not present the question of an inconsistent, contradictory, and self-destructive verdict. [Whitesell v. Joplin & P. Ry. Co. (Kan.), 222 Pac. 133; Benson v. Southern Pac. Co. (Cal.), 171 Pac. 948; Melzner v. Raven Copper Co. (Mont.), 132 Pac. 552.]

The application of the rule of logic that a verdict for the servant is in effect a verdict for the master in a case where the liability of the master is wholly dependent on the negligence of the servant, and is contradictory of a finding against the master, presupposes that there has been a correct trial of the question of the servant's negligence on the merits and that such verdict is not attributable to or brought about by erroneous instructions to the jury as to the law. In fact, in such a case the jury is only to try the question of the servant's negligence and from that alone determine the master's liability in accordance with its finding, but if because of an erroneous instruction the jury does not express in its verdict its real belief as to the servant's negligence or comes to a wrong conclusion as to the servant's liability therefor, but reaches a correct conclusion as to the master's liability, then the logic is the other way and the verdict is correct. In other words, the rule as to contradictory and inconsistent verdicts being self-destructive does not apply when such is brought about by errors of law. While the principle we are discussing finds its most frequent application in tort actions against master and servant, being a rule of logic rather than law, it applies, however, in all cases where the relationship of one defendant to the other determines his liability for the negligence of such other. Thus the duty of a city to keep its streets reasonably safe for travel thereon makes it liable in law for the result of negligent acts of others rendering its streets unsafe, and in Lindman v. Kansas City, 308 Mo. 161, 271 S. W. 516, the suit was against the city and a private contractor for negligence of the contractor in placing dangerous obstructions in a public street, making it unsafe. The city was liable only because and if the contractor was negligent, and this court had held in a previous case, Shafir v. Sieben (Mo.), 233 S. W. 419, that the contractor and others participating in the negligence were all liable. The jury returned a verdict against the city only and in favor of the contractor, Carroll, as to which the court said: "The verdict in favor of Carroll was accidental and inclusive and was produced by misleading and erroneous instructions given on the part of Carroll." Error was assigned that "on the whole record

the judgment was erroneous, contradictory and self-destructive in character, and the verdict upon which the judgment was based was erroneous, contradictory and self-destructive in character, for the reason that the only cause of action, if any, alleged in respondent's petition against Kansas City, was founded on the allegations that appellant Kansas City was liable for having permitted defendant Carroll to place in the street an unreasonably great and excessive amount of building material, · . . . and the jury by their verdict in favor of defendant Carroll found that there was not an excessive or unreasonable amount of material in the street and that that portion of the street so occupied was not unreasonable," citing McGinnis v. Railroad, 200 Mo. 347, 98 S. W. 590; Stevick v. Railroad, 39 Wash. l. c. 506, and like cases in this and other states. The court held said cases not applicable and said: "We are unable to see how the verdict in favor of Carroll absolves the city from its negligence. The verdict for him might have been the result of an *erroneous instruction* given in his favor which in no wise would affect a joint tortfeasor who was liable. [Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528; Kiefer v. St. Joseph, 243 S. W. 104.]" Strictly speaking, the city in that case was not, as the Newberry Company here is not, a joint tort-feasor, though treated as such in law, as is pointed out in many cases where the liability is not based on actual and personal wrongdoing but arises solely from the status of the parties. [Doremus v. Root, 23 Wash. l. c. 715, quoted in the McGinnis case, supra, at p. 359.]

 Nor can we say that the negligence causing plaintiff's injuries in this case was *solely* that of the servant Johnson. It may well be that he, as manager of the store and business, was responsible for negligence of the other employees under his direction, but each could be held responsible for his own negligent act of misfeasance or nonfeasance. There were three employees of Newberry Company other than Johnson and all of them at times attended to letting down and rolling up the awning and taking care of ice on the sidewalk. All that plaintiff had to prove in making a case against Newberry Company was to prove that the awning in question was so negligently rolled up and kept in a condition that water and snow was collected, melted and run down in such quantities in one place on the sidewalk as to form a dangerous ridge or streak of ice across the sidewalk, on which plaintiff slipped and fell to her injury, and that this condition was due to the negligence of one or more of the Newberry Company's employees. It was not material or necessary to show which one of the employees was to blame or most to blame in this matter. If the jury could properly find from the evidence that such servants or any of them other than Johnson were in whole or in part responsible for this negligent condition of the awning and sidewalk, then such was not due *solely* to John-

son's negligence and acquitting him of negligence did not render the verdict as to the Newberry Company self-contradictory or discharge the Newberry Company. One of these servants, Alexander, testified that it was his duty to clean the walks in the morning and run up the awning at noon. Another clerk, Brown, said that Alexander usually attended to the awning and that it was unrolled. that morning and rolled back at noon; that he did not know whether he or Alexander rolled it up that particular day. This is not a case where nobody could be or was negligent with respect to this awning except Johnson and a finding that he was not negligent did not negative all possible negligence of the other servants of the Newberry Company supported by substantial evidence. [Vest v. S. S. Kresge Co. (Mo. App.), 213 S. W. 165; Stuart v. Standard Oil Co., 211 Mo. App. 345, 244 S. W. 970.]

We should also note that defendant Newberry Company never raised the point at the trial or in this court on the original hearing, that the holding that there was no evidence sufficient to show the negligence of the servant Johnson was in effect a holding that Newberry Company could not be liable, and that the verdict against Newberry Company was inconsistent, contradictory, and self-destructive within the doctrine of the McGinnis and similar cases. We need not go outside the errors complained of by appellant. This question, therefore, has not been properly preserved and presented for review in this court.

There has also been injected into this case since its first submission here the suggestion that there is no such final judgment disposing of all the parties and issues as supports any appeal. We have now dimissed plaintiff's appeal as a nullity and the case stands on defendant Newberry Company's appeal from the judgment against it for $10,000. The claim is that the judgment is not final, though complete in favor of plaintiff and against the Newberry Company, since it does not contain a formal recital that plaintiff take nothing from defendant Johnson and that he go hence without. day, or equivalent words, and not being final as to him (Lyons & Reesman v. Rollinson, 109 Mo. App. 68, 82 S. W. 646, and cases cited), it is not final as to the Newberry Company. [Cox v. Schaab Stove & Fur. Co., 332 Mo. 492, 58 S. W. (2d) 700.] The Lyons & Reesman case was against a single defendant and at the close of the evidence the court sustained a demurrer thereto and plaintiff took a nonsuit with leave. Plaintiff then filed a motion to set aside the nonsuit and for new trial, which the court overruled, and without more took an appeal. (Note: We might ask here, what else could the plaintiffs have done? Must plaintiffs have insisted that a formal judgment be entered against themselves? There are cases so holding.) The court there treated this as being an attempted appeal from the order overruling the motion to set aside the nonsuit, and

as the right to appeal is purely statutory and rather technical, the court held that plaintiffs' appeal was premature and must be dismissed. So we are holding here as to plaintiff's appeal. In the other case, Cox v. Schaab Stove & Fur. Co., there was a trial, verdict and judgment against three defendants. The court granted a new trial as to one defendant and overruled it as to the other two. This court held that as a new trial had been granted to one defendant, an appeal would not lie till his new trial was disposed of. Obviously that case was yet pending and undisposed of in the trial court at least as to the defendant who was granted the new trial. Here the situation is quite different. When the evidence was all in and the court sustained a demurrer thereto as to Johnson, the plaintiff took a nonsuit as to him with leave and submitted the case to the jury as against defendant Newberry Company. That was certainly proper procedure as Johnson, for the purpose of that trial at least, was out of the case. The jury returned a verdict for plaintiff and against defendant Newberry Company, which was also proper procedure. The court or clerk then followed the common though erroneous practice of entering judgment on the verdict at once and without awaiting the outcome of the motions for new trial by defendant and to set aside the nonsuit by plaintiff. [Cox v. Schaab Stove & Fur. Co., 332 Mo. 492, 58 S. W. (2d) 700, 701, and cases cited; Stephens v. D. M. Oberman Mfg. Co., 334 Mo. 1078, 70 S. W. (2d) 899, 902.] The judgment then entered under a single entry and as an entirety recites among other things that "at the close of all the evidence defendant W. W. Johnson tenders an instruction in the form of a demurrer or directed verdict on behalf of defendant W. W. Johnson, . . . and after said instruction as to defendant W. W. Johnson is given by the court to the jury and before the jury returns a verdict the plaintiff takes an involuntary nonsuit as to defendant, W. W. Johnson, with leave to move to set the same aside by reason of the giving of the above instruction." It then recites the giving of instructions, argument and submission to the jury and that the jury returns into court the verdict, copied in full, followed by the usual formal recital that plaintiff have and recover the amount specified against defendant Newberry Company. This judgment in legal contemplation follows the later record entry showing the filing and overruling of plaintiff's motion to set aside the nonsuit as to Johnson and the motion for new trial of defendant Newberry Company. Wiping out plaintiff's attempt to appeal and viewing the record as if that had never been done, who can say in the face of this record that the case was not finally ended as to both defendants or that it is yet pending and undisposed of as to either or both? To do so is to make substance yield to mere form. Grant that it would be better form to have had such judgment entry say that the defendant Johnson "go hence," as in Rogers v. Gosnell,

51 Mo. 466, or that the case ''be dismissed,'' as in Moody v. Deutsch, 85 Mo. l. c. 244, yet is it not true, as said in the Lyons & Reesman case, supra, ''that a judgment will be held sufficient when it appears to have been intended by some competent tribunal as the determination of the rights of the parties to an action and shows in intelligible language the relief granted, and accordingly it was held that, while the judgment just quoted was not in the exact form of that as required by Boggess v. Cox, 48 Mo. 278, it was sufficient. And a similar ruling was made by us in Trumbo v. Flournoy, 77 Mo. App. 324, and in Farley Bros. v. Cammann, 43 Mo. App. 168.''

We have a statute, Section 960, Revised Statutes 1929, which provides that ''the plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury,'' and this is a right which the court cannot deny at least without good cause. [Mayer v. Old, 51 Mo. App. 214; Derrington v. Poplar Bluff (Mo. App.), 186 S. W. 561; Templeton v. Wolf, 19 Mo. 101.] The taking of a nonsuit is essentially the act of the plaintiff rather than of the court, which records and gives sanction to the plaintiff's act. We know of no reason why this statute does not apply to taking a nonsuit as to one of several defendants as well as to all. The taking of a nonsuit amounts to and has the effect of a dismissal of the case as to one or all the defendants. [18 C. J. 1145 and 1147.] It is not a final disposition of the cause of action on the merits but is a final termination of the particular suit. The giving of leave to move to set aside the dismissal or nonsuit means that the court, when the nonsuit was involuntary, will later reconsider its action which necessitated the nonsuit and may grant a new trial. The motion to set aside the nonsuit is in effect a motion for new trial. If no motion to set aside is filed or if filed and overruled, the nonsuit is final at least at the end of the term and effectuates a dismissal of the action as to defendant Johnson. In Keyes v. Chicago, B. & Q. Ry. Co., 326 Mo. 236, 31 S. W. (2d) 50, 61, on much the same facts as here, the court said: ''Under the code procedure, applicable in our jurisdiction and in most other state jurisdictions, the taking by a plaintiff of an involuntary nonsuit as to one or more of several codefendants is equivalent to a *dismissal of plaintiff's action* as to the defendants against whom the involuntary nonsuit is taken (18 C. J. 1145, and 1147).; and, as a general rule, in tort actions, plaintiff may dismiss or discontinue as to a part of the defendants without discharging the rest, except where the action is for a tortious conspiracy entered into by all the defendants. [18 C. J. 1162.] An involuntary nonsuit having been taken by plaintiffs herein, with the approval of the trial court, as to the individual defendants, Briscoe and Murphy, prior to the submission of the cause to the jury, it is clearly evident that there was no issue to be determined by the jury as respects the in-

dividual defendants, and that the *only defendant remaining in the cause* at the time of the submission of the cause to the jury was the corporate defendant, railroad company. Hence, the verdict of the jury disposed of all the issues as between the only parties remaining in the cause at the time of submission, namely, the plaintiff, Keyes, and the corporate defendant." In Stephens v. D. M. Oberman Mfg. Co., 334 Mo. 1078, 70 S. W. (2d) 899, 902, an action like this against the employer and employee, the jury returned a verdict against the employer and in favor of the employee. The court sustained a motion in arrest of judgment as to the employer because the acquittal of the employee of negligence, his liability resting solely on the doctrine of *respondeat superior,* necessarily discharged the employer, but the judgment stood in favor of the employee. On plaintiff's appeal the court said: "In this situation, the several courses above stated were open to the plaintiff. Plaintiff might have *let the term end without action,* in which event the order in arrest would have amounted to a dismissal as to the two employers and the judgment would have become final in favor of the chauffeur." If the judgment in this case had been withheld, as it should have been, till after the overruling of defendant's motion for new trial and plaintiff's motion to set aside her nonsuit and then entered in connection with the overruling of such motions, the record would be much simplified. This, however, is a mere irregularity and we should treat the record as if so written.

Particularly is it true that in actions for tort a plaintiff may at any stage of the proceeding before final submission dismiss or take a nonsuit as to any defendant without discharging the others. [18 C. J. 1162.] As any one of the tort-feasors may be sued singly or in connection with any other tort-feasor, the defendant can never object that another tort-feasor was not sued or that the case has been dismissed against him. "Where several wrongdoers are charged with the same tort, plaintiff may, at any stage of the proceeding, dismiss as to one or more of them without affecting the merits of the action as to the others." [Berkson v. Railroad, 144 Mo. 211, 45 S. W. 1119; Rogers v. Rogers, 265 Mo. 200, 209, 177 S. W. 382.] If, therefore, the record here sufficiently, though defectively, shows a nonsuit or dismissal as to defendant Johnson, what right has defendant Newberry Company to complain? Johnson, who alone is interested in having a record completely discharging him, is not complaining and plaintiff insists that the record is sufficient in that respect. We do not think that a judgment of dismissal or nonsuit, in order to be effective, need be clothed in all the formalities and recitals of a regular judgment. If the record is plain and shows that a nonsuit or dismissal has been taken as to one defendant, that is, that he is effectively let out of the case and that no action has been

taken bringing him back in, that is sufficient. [18 C. J. 1167; State ex rel. v. McQuillin, 246 Mo. 674, 695, 152 S. W. 341.]

Suppose this court should do no more than examine the record and enter a judgment dismissing both appeals on the ground that no final judgment appears disposing of all the issues as to both the defendants. The result would clearly be that the case would stand unaffected by this appeal and just as it is or would be if nobody had appealed. What would have been then done doubtless is that unless plaintiff's judgment against Newberry Company had been promptly paid, an execution would issue. If the judgment is defective in the manner claimed, clearly the court records and minutes are sufficient to warrant a *nunc pro tunc* entry by court order supplying the deficiency and the judgment would stand complete. Such would be a useless formality and we think unnecessary.

We have considered the question of the judgment being excessive but it would serve no useful purpose to discuss the evidence. We rule this point also against defendant.

The result is that plaintiff's appeal is dismissed and the judgment of the trial court should be and is affirmed. It is so ordered. *Ferguson, C.,* concurs; *Hyde, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* not sitting.