## W. D. CRAIG v. KANSAS CITY TERMINAL RAILWAY COMPANY et al.; WILLIAM P. CARMICHAEL COMPANY, Appellant.

### Division Two, July 16, 1917.

1. **DAMAGE TO REALTY: Necessary Plaintiffs: Trustee and Mortgagee.** In a suit by the holder of the equity of redemption for damage to his real estate caused by an excavation on abutting property, the fact that the trustee in an existing deed of trust and the holder of the mortgage notes are not joined as plaintiffs, is no defense to the action; and a motion by defendant who knows of the existence of the deed of trust, to make them parties, made after all the evidence is in, comes too late.

2. **REMOVAL TO FEDERAL COURT: Demurrer as to Resident Defendant.** Where the trial court without the consent of plaintiff sustains a demurrer to the evidence on behalf of the only resident defendant, the remaining non-resident defendant is not entitled to have the cause removed to the Federal court.

3. **EXCAVATION ON OWN GROUND: Damage to Neighboring Property: Ordinary Care.** In the absence of an agreement or promise to do so, the defendant contractor, in making a deep excavation on a railroad company's right of way and in constructing a retaining wall along or near the line of plaintiff's property, is under no legal duty to shore up or support the ground upon which plaintiff's building stands, but is liable only for such injury to the building as results from a lack of ordinary care in doing the work.

4. **————: Notice.** Where the work of excavation began in June and the damage did not occur until September and plaintiff in the meantime had full knowledge of the scope and progress of the work, with ample opportunity to protect his own adjoining property, no notice to him of the intended excavation was necessary.

Craig v. Carmichael Co.

5. ———: Scope of Foreman's Agency: Implied: Promise to Protect Building. A promise made by defendant's foreman that defendant would shore up the embankment along the line of the excavation and protect the building on plaintiff's property and save him from damage by the slipping, sinking or falling of the building's wall, is not binding on defendant, because clearly beyond the limits of his agency. Nor is such authority to be implied from the fact that, after the building cracked and was in danger of falling and the men at work on the excavation were threatening to leave for fear the house would fall on them, the foreman employed an outside workman to shore up the building and defendant paid his bill, for that was done to protect defendant's interests, ᶇot plaintiff's.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Haff, Meservey, German & Michaels* for appellant.

(1) The trustees or beneficiaries in the deeds of trust were necessary parties. Chouteau v. Boughton, 100 Mo. 406; Logan v. Wabash, 43 Mo. App. 71; Heitkamp v. Granite Co., 59 Mo. App. 244; Railroad v. Baker, 102 Mo. 560; Thompson v. Railroad, 110 Mo. 163; Siemers v. Schrader, 88 Mo. 20; James v. Worcester, 141 Mass. 361; Stewart v. Finkelstone, 206 Mass. 28, 28 L. R. A. (N. S.) 634; Delano v. Smith, 206 Mass. 365, 30 L. R. A. (N. S.) 474. (2) The motion to transfer the case to the Federal court should have been sustained. Powers v. Railroad, 169 U. S. 92; Berry v. Railroad, 118 Fed. 911. (3) The matter of Hamilton's so-called "assurances" had no proper place in the case; and if it did have, the question of Hamilton's authority to make them was a jury question. Adv. Co. v. Wanamaker & Brown, 115 Mo. App. 295; McGraw v. O'Neil, 123 Mo. App. 691; Hodkins v. Machinery Co., 161 Mo. App. 87; Larson v. St. Ry. Co., 110 Mo. 234 Prevost v. Ice Co., 185 Pa. 617; Obert v. Dunn, 140 Mo. 476; Walters v. Hamilton, 75 Mo. App. 244. (4) Defendant owed plaintiff no legal duty to shore up or protect the building. Obert v. Dunn, 140 Mo. 476; Meat Co. v. Foster, 159 Mo. App. 537;

Gates v. Fulkerson, 129 Mo. App. 620; Schumacher v. Breweries Co., 247 Mo. 141; Larson v. Railroad, 110 Mo. 252; Glenn v. Hill, 210 Mo. 291; Cooper v. Const. Co., 231 Pa. 557. (5) The court erred in refusing to instruct that it was plaintiff's duty to shore up the Craig building. Obert ·v. Dunn, 140 Mo. 476; Larson v. Railroad, 110 Mo. l. c. 252; Burk Bros. Co. v. Foster, 159· App. 537; Teepen v. Taylor, 141 Mo. App. 282; Evans v. Railroad, 222 Mo. 455; Ballentine v. Railroad, 40 Mo. 491; Turner v. Haar, 114 Mo. 335; Brewing Assn. v. Talbot, 141 Mo. 674; Graney v. Railroad, 157 Mo. 666; Fuchs v. St. Louis, 167 Mo. 620; Bowen v. Railroad, 95 Mo. 268; 1 Ency. of Ev. 209. (6) No notice to Craig as to intention to excavate was necessary. Burk Bros. Co. v. Foster, 159 Mo. App. 537.

*W. H. Cloud* and *Reed & Harvey* for respondent.

(1) The trustees or beneficiaries in the deed of trust were not necessary parties. Logan v. Railroad, 43 Mo. App. 71; Masterson v. Railroad, 72 Mo. 347; Woods v. Hilderbrand, 46 Mo. 284; Kennet v. Plummer, 28 Mo. 145; Hardwick v. Jones, 65 Mo. 60; Johnson v. Houston, 47 Mo. 231; Chouteau v. Boughton, 100 Mo. 406; 27 Cyc. 1272; Elvins v. Delaware Co., 63 N. J. L. 243. (2) The court properly refused to transfer the case to the Federal court. Berry v. Railroad, 118 Fed. 911; Powers v. Railroad, 169 U. S. 92; Whitcomb v. Smithson, 175 U. S. 637. (3) The instructions properly assumed foreman Hamilton's authority to make the assurances of protection claimed by respondent to have been made. (a) His authority was a conceded fact in the case. Davidson v. Transit Co., 211 Mo. 356. (b) It was unnecessary for respondent to show the exact extent of Hamilton's authority. Garretzen v. Duenckel, 50 Mo. 104; Barree v. Cape Girardeau, 197 Mo. 391; Douglass v. Stevens, 18 Mo. 362; Minter v. Railroad, 41 Mo. 503; Perkins v. Railroad, 55 Mo. 201; Harriman v. Stowe, 57 Mo. 93; Ephland v. Railroad, 137 Mo. 187; Compher v. Telephone Co., 127 Mo. App. 553; Mechem on Agents, sec. 734; Tiffany on Agents, p. 274. (4) The Carmichael Company

owed to respondent the duty to excavate and construct in a careful manner. (a) It was responsible for any negligence. Gerst v. St. Louis, 185 Mo. 208; Charless v. Rankin, 22 Mo. 573; Larson v. Metropolitan, 110 Mo. 234; Obert v. Dunne, 140 Mo. 476; McGrath v. St. Louis, 215 Mo. 209; Eades v. Gaines, 58 Mo. App. 586; Walters v. Hamilton, 75 Mo. App. 237. (b) It failed to do the work of construction in sections, but, on the contrary, it had open for almost, if not the entire length of the Craig lot, a trench before the construction of the retaining wall. Larson v. Metropolitan, 110 Mo. 234; Obert v. Dunn, 140 Mo. 476. (c) It assured respondent that it would protect his building by shoring, but failed to do so. Walters v. Hamilton, 75 Mo. App. 237; Larson v. Metropolitan, 110 Mo. 244; Gildersleeve v. Hammond, 109 Mich. 439.

ROY, C.—Plaintiff sued the Kansas City Terminal Railway Company and the William P. Carmichael Company for damages to a building caused by an excavation made near it by the latter company as a contractor in the construction of a retaining wall for the right of way of the railroad.

The answer of the Carmichael Company included a counterclaim for $172.40.

On the trial there was a verdict for the Railroad Company, and a verdict for the plaintiff against the Carmichael Company for $10,000, and also a verdict for plaintiff against said counterclaim.

There was a *remittitur* of $2500 by plaintiff, and a judgment in his favor for the $7500.

The Carmichael Company, hereinafter called the defendant, has appealed.

On June 21, 1911, when the work of excavation for such retaining wall began, the plaintiff was the owner of lot 1 in Block 1 in Graham's Addition to Kansas City. On that lot was a building the wall of which was contiguous to the right of way of the Terminal Company. There were then two deeds of trust on the property, one for $4000, the other for $2500, in both of which V. F.

Boor was trustee. C. H. Johnson was payee of all the notes, none of which were mature when the suit was begun.

At that place the railroad was in a cut about thirty-five feet deep, with a double track at about the center of the right of way, which was a hundred and twenty-five feet wide. The bank sloped upward from near the track to about the floor of the basement of plaintiff's building.

The plaintiff was daily about his business in and around the building during the whole progress of defendant's work, and was fully aware of its extent and nature. The south bank of the excavation was about twenty-five feet from plaintiff's building. The sides of the excavation were braced by sheet piles three inches thick, driven down to rock and supported by longitudinal and cross beams. From four to seven feet of that trench at the bottom was excavated by blasting the rock. The evidence was conflicting as to whether such blasting was done by the use of overcharges of dynamite.

On September 9, 1911, while the work was in progress and before the wall was completed, plaintiff's north wall slipped down and out so as to tear it loose from its connection with a considerable portion of the floors, but it remained standing. The piles by which defendant was attempting to support the side of its excavation were to some extent shoved out of line by the pressure of the dirt against them. There was danger that the wall of plaintiff's building would fall on defendant's work, and its workmen were threatening to quit on that account. Defendant's foreman, Hamilton, thereupon employed one Bovard to prop the building to keep it from falling, and on behalf of defendant paid him $172.40 for that work.

Plaintiff testified that soon after the work began the foreman, Hamilton, told him that he need not protect his building and promised him that defendant would shore it up and protect it from danger. Hamilton on the stand denied making such promise.

The petition seeks a recovery on the following grounds:

1. Because defendant gave plaintiff no notice of such contemplated work.

2. That defendant promised plaintiff to protect him against damage.

3. That defendant failed to do such work in short sections.

4. That defendant failed to support the sides of the excavation with piles in sufficient number and strength to support the earth.

5. That defendant used overcharges of dynamite in blasting the rock.

The answer, among other things, contained a general denial, and the averment that the plaintiff was not the owner of the property, but that the same was owned by C. H. Johnson and V. F. Boor and others. Defendant did not file any motion asking that Boor or Johnson be made a party to the suit until after the evidence was all in, and when the cause was ready to be submitted to the jury.

The plaintiff and the Terminal Company are citizens of Missouri, and the Carmichael Company is a citizen of Indiana.

At the close of plaintiff's evidence the court sustained a demurrer on the part of the Terminal Railway Company to plaintiff's evidence. Thereupon the Carmichael Company filed its application and bond for a removal of the cause to the Federal court, which application was refused.

The third instruction for plaintiff was as follows:

"The court instructs the jury that if you believe from the evidence that the building of plaintiff and that portion of his lot upon which the same rested was injured (if you find it to have been injured) by reason of the fact that the building was not shored up and protected in time to have averted such injuries, and that the defendant through its foreman, Hamilton, had assured the plaintiff that defendant would shore up and protect the building and that plaintiff relied on such assurances, and

that defendant negligently and carelessly failed to shore up and protect the building as aforesaid, then your verdict must be for the plaintiff."

And his second instruction embodied the same theory.

Defendant's refused instruction Number 10 was as follows:

"The court instructs the jury that there is no evidence in this case that defendant Carmichael Company agreed to protect plaintiff's building or land from damage on account of the excavation of the trench for the new retaining wall mentioned in evidence, and you are instructed that there can. be no recovery by plaintiff in this case on that theory."

I.  The fact that the trustee and beneficiary in the deeds of trust were not joined as plaintiffs herein is no defense to this action.  It was said in Matthews v. Railroad, 142 Mo. l. c. 658: "The deed of trust, then, is really a mere security, and an injury to the freehold is a damage to the grantor, who is, in equity, the real owner, and he is at least a proper party to a suit to recover compensation therefor."

Parties to Action.

We may concede that the trustee and beneficiary, one or both, may also sue for an injury to the freehold. [See Chouteau v. Boughton, 100 Mo. 406.]

Still, the grantor in the deeds of trust is not united in interest with the trustee and beneficiary so as to require them to be made parties under Revised Statutes 1909, section 1733.  It was held in Little v. Harrington, 71 Mo. 390, that joint owners of personalty should unite in a suit for its conversion.  Such joint owners of personalty are united in interest.  Undoubtedly the defendant had the right to proceed by motion timely filed to have the trustee and beneficiary in the deeds of trust made parties to this suit, in order that all the rights of the parties in relation to each other and to the cause of action might be adjudicated and settled in one proceeding, and that the defendant be not vexed with a multi-

plicity of suits. But the defendant, knowing of the existence of the deeds of trust, made no such motion until after the evidence was all in. It was then too late. What is more, the appellant is not here complaining of the overruling of its motion to make the trustee and beneficiary parties to this suit, but stands on the proposition that plaintiff had no right to sue without making them parties.

II. The trial court properly refused to transfer the cause to the Federal court. In Berry v. Railroad, 118 Fed. 911, and in Powers v. Railway Co., 169 U. S. 1. c. 92, it was held that where the plaintiff volun-

Removal to Federal Court. tarily dismissed as to the resident defendant, the non-resident defendant was entitled to a removal. But in Whitcomb v. Smithson. 175 U. S. 635, FULLER, C. J., held that where the trial court directs a verdict in favor of the resident defendant without the consent of plaintiff, there is no right to a removal.

III. Lord TENTERDEN, in Wyatt v. Harrison, 3 Barn. & Adol. 1. c. 876, said:

"It may be true that if my land adjoins that of another, and I have not by building increased the weight upon my soil, and my neighbor digs in his land so as to occasion mine to fall in, he may be liable to an action."

In Charless v. Rankin, 22 Mo. 566, LEONARD, J. quoted that language, but added: "When, however, the lateral pressure has been increased by the erection of buildings, it seems. to be well settled at common law by authorities, that no man has a right to an increased support unless he has acquired such a servitude by grant or prescription. It is so laid down in the early case of Wilder v. Minsterly, 2 Rolle's Abr. 564."

It was also there said:

"It is to be observed that the defendant was upon his own ground, and in digging upon it, exercised an undoubted right of property, which the plaintiff had no right, either by express grant or prescription—by stat-

ute or local ordinance—in any way to interfere with or prevent; and although, in exercising his rights, it was certainly his duty to his neighbor to use ordinary care in order to avoid doing him harm, he was not bound to observe the same care that he would have taken, as a wise and sensible man, if he had been the owner of both buildings—the one erected and the one about to be erected. He would, of course, in that event, have shored up and would have submitted to many inconveniences, and, indeed, would have incurred considerable additional expense in doing the new work, rather than expose the building already erected to any risk. Every prudent person, in such a situation, would take precautions—subject himself to inconveniences, and forego the exercise of every right that would endanger his present building, if he found it for his interest to do so. In the present case, if the laying of the new foundation, in very short sections, would have been attended with increased expense and danger to the sufficiency of the new wall, and the defendant had been the owner of the plaintiff's building, he might have found it for his interest to have submitted, and most probably would have submitted, to this inconvenience and risk, and even increased expense, to avoid all hazard to his own property; yet the law does not exact of him the same forbearance and care and expense for the security of his neighbor's property that he would have found it for his interest to have taken for his own."

In Obert v. Dunn, 140 Mo. l. c. 485, is this:

"If, as shown by the authorities, plaintiff was only entitled to lateral support from the lot of defendants for the soil of his lot in a natural state, and not to such support for a building placed on his land, and if, as also shown by the authorities, defendants when engaged in excavating on their own land for a cellar, and in the exercise of ordinary care and skill, and after due notice to the owner are not liable to such owner, though in digging on their own land they dig so near the foundation of the house of their neighbor as to cause it to crack and settle or even fall down, then it must follow that the

only question in the case is whether the digging was done with ordinary care and skill.''

It follows that, in the absence of an agreement or promise to do so, the defendant was under no legal duty to shore up or support the ground upon which the building stood, but was liable only for the lack of ordinary care in doing its work.

If there were any evidence in this case to show that under the conditions which prevailed at the time plaintiff's ground would have slipped and sunk even if there had been no building on it, the case would be different in its legal aspects.

IV.  No notice to the plaintiff of the intended excavation was necessary.  The work began in June and the damage did not occur until September.  In the meantime plaintiff had full knowledge of the scope and progress of the work with ample opportunity to protect his property. [Larson v. Street Ry. Co., 110 Mo. 234; Gerst v. St. Louis, 185 Mo. 191; Burk Bros. v. Foster, 159 Mo. App. 537.]

*Notice.*

V.  Hamilton, defendant's foreman, had no authority as such to bind the defendant by a promise to plaintiff (if any such was made) to protect plaintiff from damage by the slipping, sinking or falling of the wall.

*Agent's Authority.*

1 Mechem on Agency (2d Ed.), section 715, says:

''It is a fundamental principle in the law of agency that every delegation of authority whether 'general' or 'special,' carries with it, unless the contrary be expressed, implied authority to do all of those acts, naturally and ordinarily done in such cases, which are reasonably necessary and proper to be done in this case in order to carry into effect the main authority conferred. This doctrine rests upon the presumed intention of the principal that the main authority shall not fail because of the lack of express authority to do the incidental acts reasonably necessary to make that authority effective, and also upon the presumption that the principal expects

the business to be done in the usual and ordinary way.''
Section 743 of that work has this: ''It is therefore de-
clared to be a fundamental rule, never to be lost sight of
and not easily to be overestimated, that persons dealing
with an assumed agent, whether the assumed agency be
a general or special one, are bound at their peril, if they
would hold the principal, to ascertain not only the fact
of the agency but the nature and extent of the authority,
and in case either is controverted, the burden of proof is
upon them to establish it.'' And section 750, this: ''At-
tention must also be given to the question, of whom shall
inquiry as to authority be made? Must the other party
go to the principal or may he rely upon the statements
of the agents or of strangers? To this question, the law
in general gives but one answer: The party dealing
with the agent must not rely on what the agent alone
may say or do, and a *fortiori* not on what mere strang-
ers say or do, but he must be able to trace the authority
on which he relies back to some word or deed of the
principal.''

Respondent's brief says that it is a conceded fact at
the trial that Hamilton was defendant's foreman. So it
was; but that is not a concession that Hamilton had any
power to assume such additional obligation on the part
of his principal. That brief also calls attention to the
fact that, after the building cracked and was in danger
of falling, Hamilton arranged with Bovard to shore up
the building, and that the defendant thereafter paid the
bill for that work. Bovard, plaintiff's witness, testified
that when Hamilton arranged for that shoring up de-
fendant's workmen were threatening to leave for fear
that the house would fall on them. Thus it happened
that both the plaintiff and defendant were at that time
desirous of protecting the building, the plaintiff, because
it belonged to him, the defendant, because it did not
want it to fall on its work and on its employees. In such
a situation Hamilton owed his employer a duty to pro-
tect that employer's interests by such shoring up, but
such duty did not involve the power to bind his prin-
cipal to protect the interests of this plaintiff. When

Hamilton hired Bovard to protect defendant's interests by shoring up the building, he was within his authority as foreman, and the defendant was bound to pay the bill. But when Hamilton agreed (if he did so agree), to protect the plaintiff's interests by shoring up the house, he was clearly beyond the limits of his agency. Such contract did not in any way benefit or protect the interests of the principal, this defendant. It follows that plaintiff's second and third instructions which are based on the theory that Hamilton as such foreman had authority to make such agreement on behalf of defendant are erroneous, and defendant's refused instruction number 10 should have been given.

We have not overlooked what was said in the case of Larson v. Metropolitan St. Ry. Co., supra. But there is a clear line of demarcation between that case and this. The owner of the adjoining property had no previous notice of the intended excavation as in this case. But in that case the foreman (there called the superintendent), during the progress of the work, told the adjoining proprietor that he intended doing the work in sections. The first part of the work was done that way. But later, and in the absence of the adjoining proprietor, and without any notice to him of a change of plan, the work was rushed through without regard to sections, and the portion of the house adjoining the last excavation fell. It was there said:

"We think that plaintiff had the right to rely upon the statement of the superintendent, made during the progress of the work and of his agency (and, hence, *res gestae*), as to the care which defendant intended to exercise towards the property of plaintiff with reference to which that statement was made. He had the right to assume that the course foretold would be followed, at least until he had notice to the contrary and a reasonable opportunity thereafter to act upon such later notice. We have added this last observation to meet the suggestion of defendant that plaintiff was duly advised that the excavation was not being done in sections. But on this point it appears that one section was first built, substan-

tially as promised; and that the long and dangerous excavation later, to which the fall of the building is charged, occurred between half past two and five o'clock of the afternoon preceding the injury.

"On these facts the court cannot justly declare, as a conclusion of law, that plaintiff, in the exercise of reasonable care, was chargeable with notice that the plan of construction, previously indicated by the superintendent, was not to be followed, and should have taken measures of his own for the protection of his domicile."

In that case the statement of the foreman was not treated as a valid and binding contract of his principal that the adjoining proprietor should be protected against loss. That statement was there considered merely as affecting the question of notice. The foreman in that case did not say: "We will protect your property from damage." He merely said in effect: "We are going to do the work in sections," and then he suddenly did it in another way *without notice of such change of plan.*

In this case there is no complaint of a lack of notice or of a sudden change of plan. From June until September the work went on under plaintiff's eyes. The sides of the excavation were supported by piles which were braced in a certain manner. The plaintiff was not misled by what he saw. If the method of protecting the sides of the excavation was insufficient, he had ample opportunity to take such course as he saw proper for the protection of his property. As between the parties the responsibility for the protection of the property rested upon the plaintiff, the defendant being responsible only for the lack of ordinary care. If the foreman agreed with the plaintiff that defendant would shore up and protect the building, such contract was without any consideration and beyond the powers of the foreman as agent.

Appellant raises several other interesting questions, but as they are not likely to arise, at least in the same way, on another trial, we will pass them by.

The judgment is reversed and the cause is remanded.

*White, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.