**ROYAL INDEMNITY COMPANY, a corporation, Respondent,**

v.

**Earl SCHNEIDER et al., Appellants.**

**Nos. 25714, 25715.**

Missouri Court of Appeals,
Kansas City District.

Sept. 7, 1972.

———◆———

Charles B. Adams, Kirksville, for appellant Schneider.

William Y. Frick, Frick & Mayberry, Kirksville, for appellant Fulkerson.

Tom B. Brown, Brown & Phillips, Edina, for respondent.

PER CURIAM.

The parties will be referred to herein as they were below.

Defendants William Fulkerson and Frances Fulkerson, husband and wife, were the owners of a vacant lot in the city of Kirksville, Missouri. This lot was north of and contiguous to property owned by Joseph Burdman and Esther Burdman, husband and wife, upon which was located a two story brick building, hereinafter referred to as the "Burdman building".

This building was occupied by a gas utility company, Solar Gas, Inc., as tenant and the original plaintiff in this action. On the eve of trial, however, the present plaintiff, Royal Indemnity Company, was substituted as plaintiff upon the basis that it, as insurer, was the assignee of the total claim of Solar Gas, Inc., against the defendants.

The defendants Earl Schneider and Annabel Schneider were husband and wife, and Earl Schneider was in the contracting and construction business in Kirksville. So far as this record now shows, he was the sole owner and proprietor of the business, and Mrs. Schneider had no business connection with it as a partner or otherwise.

In the latter part of 1965 (probably December), Earl Schneider entered into a written contract (wherein he is designated as *Andrew E. Schneider*) with the defendants Fulkerson to construct a one story brick and concrete building, with full basement, on the Fulkerson property, according to plans and specifications approved by Fulkerson and the Goodyear Tire and Rubber Company, Fulkerson's prospective tenant. This was a simple construction contract (Plaintiff's Exhibit No. 1) to which were attached the plans and specifications (Plaintiff's Exhibits Nos. 2, 3 and 4). Mrs. Schneider was not a party to this contract, and so far as this record shows, had no connection with the actual construction work thereunder.

The project was to commence not later than March 1, 1966, and was to be completed within 120 days. According to the plans, Schneider was given the option of building the south basement wall of the new building on the property line and flush with the north wall of the Burdman building of standard construction, or placing the

south wall 30 inches within the property line of the Fulkerson property, and thus that distance away from the north wall of the Burdman building. This optional wall was to be of heavier construction. This latter wall was referred to throughout the record as the "optional wall".

There was no evidence as to the date of original construction of the Burdman building, but it was an old structure and had apparently enjoyed no major repairs or improvements for 30 years.

Before commencing construction on the Goodyear building, the defendant, Earl Schneider, visually inspected the north wall of the Burdman building. This inspection disclosed that the wall was badly deteriorated, had settled, and was uneven; there were verticle cracks; there was no mortar between the bricks in many spots; and the bonding ties were broken. He also examined the lower floor inside the Burdman building and found it to be concrete, "patched and repatched", and not level but sloping toward the north (toward the Fulkerson property). He also examined the foundation and footings of the Burdman building at one spot about 12 to 18 inches wide and to a depth of 1 or 2 feet. He found that the north brick wall of the Burdman building rested on a structure of flat rocks laid one on top of another to the depth of 20 to 24 inches, and with no cement or mortar between. He made no soil test or other tests as to the Burdman building support, other than as above described.

Defendant Earl Schneider decided to build the optional basement wall to the Goodyear building because he "didn't like the looks of the (Burdman) wall". He had the property line between the Fulkerson and Burdman properties surveyed by a Mr. Lear, who put a surveyor's mark at the east and west end of the line—30 inches north of the property line.

Schneider used a back hoe with a 16 inch shovel and excavated a trench for the south foundation wall of the Fulkerson (Goodyear) building. He built this wall in sections of about 13 feet, using reinforced steel rods; he had ready-mixed concrete ready to pour into each section; he built concrete pilasters at the juncture of each section and at places supported the earth south of the wall (still on Fulkerson property) with beaver board, to prevent excessive crumbling. He did encounter crumbling of the earth along the excavation and also encountered pockets of water, which were dipped or pumped out. All of these extra procedures added to his cost.

After the other three basement walls were built and connected with the optional wall, Schneider dug out the dirt between the Burdman building and the optional wall to a depth of about 20 inches and filled that area with concrete.

During this procedure, there were heavy rains in Kirksville and a bad fire in the vicinity, which resulted in the use of a large volume of water by the fire department, which water was drained toward the Burdman building.

Schneider completed the south basement wall of the Fulkerson (Goodyear) building on April 5, 1966, and on June 8, 1966, the Burdman building collapsed and was a total loss.

Sometime in March, 1966, the defendants Schneider and Fulkerson had entered into a written agreement with Joseph and Esther Burdman (Plaintiff's Exhibit No. 22) which is generally referred to in the record as the "indemnity agreement". Parts of this agreement were blocked out and therefore not submitted to the jury. The parts in evidence and pertinent here, after describing the parties and the fact that Earl Schneider had entered into the construction contract with the Fulkersons for the Goodyear building, provide: "First parties (Schneider-Fulkerson) agree that they will take any steps deemed necessary by them to protect Second Parties' building from damage during construction and after the completion thereof," and "that they will proceed with the necessary work in constructing said basement with dispatch

and that they will complete that portion of the work adjacent to Second Parties building and not permit Second Parties building or the grounds supporting the same to remain exposed to loss or damage for any unreasonable length of time." No consideration for this agreement was stated. This agreement was attached to plaintiff's petition as an exhibit and incorporated by reference. The record is strangely silent as to the circumstances surrounding the execution of this agreement. Defendant Schneider remembers talking to the Burdmans, but does not think Fulkerson was with him (T. 183). There is no dispute, however, that the agreement was executed.

After the collapse of the Burdman building and the removal of the resulting debris, it was found that the building had rested on a cinder fill to the depth of 5 or 6 feet, through which ran a number of open flowing drains and pipes. Following the collapse, it was also ascertained that the Schneider optional wall was intact.

Plaintiff offered the testimony of one Baggerman, a consulting engineer, who testified that he had made an inspection of the property in June, 1966. He stated that the distance between the Schneider optional wall and the north wall of the Burdman building was 18½ inches, whereas, the plans provided for 30 inches; that he made probe tests with a steel rod in the area under the north wall of the Burdman building and that he could push the rod to a depth of 5 feet with the pressure of one hand; and that the concrete slab of the floor of the Burdman building had separated 9½ inches to the north, and the north wall of the Burdman building had dropped 11¼ inches.

Baggerman testified that his professional opinion was that the Burdman building had collapsed because the "cone of support" or earth under the north wall of the Burdman building had been cut and disturbed by the construction of the optional wall, and that the wall could have and should have been constructed so that this cone of support

would not be cut, or other support, such as, sheet piling, beside the Burdman building should have been substituted for the natural cone of support.

Baggerman's qualifications as an expert consulting engineer do not seem to have been challenged.

This suit was originally filed by Solar Gas, Inc. as plaintiff and it sought $13,475.44 in damages for relocation expense, loss of merchandise inventory and appliances, loss of office equipment, furniture and supplies, expense incurred investigating occurrence, and damage and cost of miscellaneous supplies and services. The Burdmans were originally joined as parties defendant, but the suit was dismissed as to them, with prejudice, before trial. Their testimony was not offered by any party, either in person or by deposition.

The trial resulted in a jury verdict in favor of the defendants and against the plaintiff, and thereafter, the court below sustained plaintiff's motion for a new trial because of error in instructions

"in that, plaintiff instructed on two theories, (one) under the agreement with one Burdman (5) and (two) the negligence of defendant Schneider alone (7) or as agent of defendant Fulkerson (9); defendants' converse instructions 6, 8 and 10 should each have included appropriate 'tails', so as to instruct the jury they could find for the plaintiff on the agreement theory and against on the negligence or agency, etc. or vice versa, etc."

The instructions involved are as follows:

### "INSTRUCTION NO. 5

Your verdict must be for the plaintiff if you believe: *First*, defendants Earl Schneider, Annabelle Schneider, William Fulkerson and Frances Fulkerson did not take such steps as they deemed necessary to protect the Burdman building from damage, and *Second*, because of such failure, defendants contract obligations

were not substantially performed, and *Third*, plaintiff was thereby damaged."

M.A.I. 26.02 (GIVEN)

"INSTRUCTION NO. 6

Your verdict must be for defendants if you do not believe each proposition submitted to you in instruction number 5."

M.A.I.–33.13—tendered by defendant Schneider (GIVEN)

"INSTRUCTION NO. 7

Your verdict must be for plaintiff if you believe:

First: defendant Earl Schneider withdrew the lateral support of land from the Burdman building, and

Second: defendant Earl Schneider was thereby negligent, and

Third: as a direct result of such negligence the plaintiff sustained damage."

M.A.I. 17.01 modified (GIVEN)

"INSTRUCTION NO. 8

Your verdict must be for defendants Earl Schneider and Annabel Schneider if you do not believe each proposition submitted to you in instruction number 7."

M.A.I.–33.13—tendered by defendants Schneider (GIVEN)

"INSTRUCTION NO. 9

Your verdict must be for plaintiff against defendants William Fulkerson and Frances Fulkerson if you believe:

First, Earl Schneider was excavating William Fulkerson's and Frances Fulkerson's land within the scope and course of his agency for William Fulkerson and Frances Fulkerson, and

Second, defendant Earl Schneider withdrew the lateral support of land from the Burdman building, and

Third, defendant Earl Schneider was thereby negligent, and

Fourth, as a direct result of such negligence the plaintiff sustained damage."

M.A.I. 17.01 and 18.01 modified (GIVEN)

"INSTRUCTION NO. 10

Your verdict must be for defendants William Fulkerson and Frances Fulkerson if you do not believe each proposition submitted to you in instruction number 9."

M.A.I. 33.13—tendered by defendant Fulkerson (GIVEN)

Both the defendants Schneider and Fulkerson filed appeals, which have been here consolidated.

█ The established rule is, that in reviewing the action of a trial court in granting a new trial, an appellate court is more liberal in upholding the action than when such motion for a new trial is denied. Tate v. Giunta, Mo.Sup., 413 S.W.2d 200, 202, and cases collected in Missouri Digest, Appeal and Error, █

This rule of liberality applies even when a new trial is granted because of error in the giving or refusal of instructions. Clevenger v. Walters, Mo.Sup. en Banc, 419 S.W.2d 102, 104–105; Pollard v. General Elevator Eng. Co., Mo.Sup., 416 S.W.2d 90, 96; Johnson v. West, Mo.Sup., 416 S.W.2d 162, 165–166.

█ The giving of defendants' converse instructions in this case was error, and the trial court properly granted plaintiff's motion for a new trial on that ground, and this action should be affirmed unless the plaintiff failed to make a submissible case on any theory.

Plaintiff below submitted its case upon two theories of recovery. In Instruction No. 5 above quoted, its theory of recovery was based upon the so-called "indemnity contract" (Plaintiff's Exhibit No. 22) and

authorized a verdict against *all* defendants. Instruction No. 7 was based upon the theory of Schneider's negligence and authorized a recovery against the Schneiders. Instruction No. 9 was based upon the theory that the Fulkersons were liable as principals for the negligence of their agent Schneider under the doctrine of respondeat superior. It thus is clear that the plaintiff's instructions submitted alternate theories of recovery against both the Schneiders and the Fulkersons. Accordingly, the defendants' converse instructions should have conversed each such theory. Schneider should have submitted one converse to cover Instructions Nos. 5 and 7, and Fulkerson should have submitted one converse instruction to cover Instructions Nos. 5 and 9.

M.A.I. No. 33.13, page 371, in the "Notes on Use", states:

> "*Caution.* This instruction is not appropriate where plaintiff has submitted alternate theories of recovery.
>
> \*     \*     \*     \*     \*     \*
>
> In those very rare cases where plaintiff submits two verdict directing instructions \* \* \* the numbers of both verdict directing instructions would be inserted."

■ Where M.A.I. is applicable, its use is mandatory, and where modification thereof is not needed, it is error to modify unless it is made "perfectly clear" by the proponent of the instruction that no prejudice resulted. Brown v. St. Louis Public Service Company, Mo.Sup., en Banc, 421 S.W.2d 255, 259.

■ From the strict adherence to M.A.I. so often and forcefully reiterated by the Supreme Court, has developed the equally forcible admonition that the "Notes on Use" thereof be religiously followed. Hunter v. Norton, Mo.Sup., 412 S.W.2d 163, 166.

In Higgins v. Gosney, Mo.Sup., 435 S.W.2d 653, it is said, l.c. 659:

> "In both Nugent v. Hamilton & Sons, Inc., Mo., 417 S.W.2d 939, and Murphy v. Land, Mo., 420 S.W.2d 505, this court specifically held that the giving of multiple converse instructions to a single verdict directing instruction violated the directions and '*Notes on Use*' of MAI and constituted reversible error. \* \* \*" (Emphasis added.)

In Davis v. St. Louis Southwestern Railroad Co., Mo.Sup., 444 S.W.2d 485, the court said, l.c. 489:

> "In any event, this court has required strict adherence to MAI instruction forms *and 'Notes on Use'* \* \* \*" (Emphasis added.)

The court properly sustained plaintiff's motion for a new trial upon the ground of error in giving defendants' Instructions Nos. 6, 8 and 10.

Appellants, although at least tacitly conceding the error in their converse Instructions Nos. 6, 8 and 10, take the position that such error was invited by reason of plaintiff's Instructions Nos. 5, 7 and 9. The authorities cited by appellants have been carefully examined and are not persuasive upon this point. All but one such authority antedate the adoption of MAI and the rules with reference to converse instructions above noted. But an even more persuasive reason why this defensive theory of invited error cannot be accepted at this stage of the litigation is that appellants' arguments are not based upon any alleged error in form of plaintiff's instruction or misstatement of law therein, but rather, upon the position that they were not supported by competent evidence. Differently stated, the position of appellants apparently is that plaintiff did not make a submissible case on any theory. Of course, if the plaintiff did not make a submissible case, the errors in defendants' converse instructions would be harmless and a new trial would not be warranted.

■ Basically, this case involves the rights of landowners with reference to lat-

eral support. The common law rule is that the owner of vacant land has the right to the necessary lateral support of the soil of an adjacent lot as a natural servitude or easement, and if such support is withdrawn, absolute liability can arise irrespective of negligence. Where, however, the lateral pressure has been increased by the construction of buildings, no one has a right to increased lateral support by reason of such construction, unless such right has been acquired by grant, contract or prescription. Absent such circumstance, it is generally the duty of the building owner to protect his own property from the results of normal excavation on adjoining land. Liability can always arise, however, if the person excavating next to his neighbor's building fails to use ordinary care, or if the excavating is done in a negligent and careless manner. Missouri has substantially adopted these common law rules. Charless v. Rankin, 22 Mo. 566; Carpenter v. Reliance Realty Co., 103 Mo.App. 480, 77 S.W. 1004; Craig v. Kansas City Terminal Ry. Co., 271 Mo. 516, 197 S.W. 141; Jennemann v. Hertel, Mo.App., 264 S.W.2d 911, 914; Smith v. Stolle, Mo.App., 77 S.W.2d 521, 522.

■ Without again reviewing the evidence as summarized above, it appears that there was ample evidence from which a jury could find that the defendant Schneider was negligent in the excavation of the Fulkerson property and the construction of the south basement wall. According to witness Baggerman, in so doing, Schneider cut through the "cone of support" (which would be within the Fulkerson property) for the north wall of the Burdman building, and thus disturbed the earth under the north wall (within the Burdman property) and failed to use sheet piling to prevent this result. He further stated that it was his expert opinion that this caused the collapse of the Burdman building.

Considering the theory as hypothesized in plaintiff's Instruction No. 5, it is based upon those parts of plaintiff's Exhibit No. 22 which were admitted into evidence. This was the agreement between the Schneiders and Fulkersons on the one hand, and the Burdmans on the other. While this document was sometimes referred to in the record as the "indemnity agreement", those parts of the agreement providing for indemnity were blocked out and were not presented to the jury. Indeed, the plaintiff did not at the trial, nor does it here, claim any right to indemnity, but claims that it is a third party beneficiary under the contract.

Certainly, it must be true, that when the defendants entered into the contract with the Burdmans, it was known by all parties that the building was occupied by the gas service utility as a tenant of Burdmans and that the purpose of the agreement was not only to protect the Burdman building, but to protect also the occupancy, possessions and business of their tenant, and, thus in turn secure the benefit of continued rentals to the Burdmans.

By executing this agreement, both the Schneiders and the Fulkersons recognized that they broadened and expanded their obligations as adjoining landowners under the common law as adopted by the decisional law of this state, both as to the Burdmans and the plaintiff's assignor, the tenant.

■ Those parts of the agreement admitted were properly admitted to establish these new relationships. The plaintiff became a donee beneficiary (third party beneficiary) within the definition of that term, as set forth in Restatement of the Law of Contracts, Section 133, pp. 151–2, which restatement has been given approval by the courts of Missouri in Stephens v. Great Southern Savings & Loan Association, Mo.App., 421 S.W.2d 332, 335; Black and White Cabs of St. Louis, Inc. v. Smith, Mo.App., 370 S.W.2d 669, 674, and as such can assert such status and claim the benefits vouchsafed to it as a result of the negligent breach of such agreement. Wolfmeyer v. Otis Elevator Co., Mo.Sup.,

262 S.W.2d 18, 22–23; Silton v. Kansas City, Mo.Sup., 446 S.W.2d 129.

In Wolfmeyer v. Otis Elevator Co., supra, it was said, 262 S.W.2d 1.c. 22:

"As stated, whatever it was defendant undertook to do which it knew or should have known or foreseen would affect plaintiff's safety, the defendant had the duty to do it carefully. Although defendant was not to be held liable in an action for the breach of the contract with the owners, a defendant, by entering into a contract, may place himself in such a relation toward third persons as to impose upon him an obligation to act in such a way that they will not be injured. * * *"

and at 1.c. 23:

" * * * It is also 'ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all' * * *"

■ Further, the argument of defendants, that this agreement was improperly admitted in evidence because plaintiff failed to allege in its petition their legal status thereunder, is not impressive. The ultimate facts were pled and the agreement was attached to the petition as an exhibit and incorporated by reference. Under the present liberal rules of pleading and permissiveness of amendments, this was sufficient. Upon retrial, plaintiff may wish to seek leave to amend its petition, and such should be freely granted.

The defendants Fulkerson in their answer denied that Earl Schneider was their agent. Upon this appeal, they assert that under this pleading and the evidence in the case, the court erred in giving plaintiff's Instruction No. 9, based upon the theory of principal-agent in view of the fact that Schneider was an independent contractor, and cite authorities which adhere to the general rule relating to freedom from liability arising from such relationship.

On the other hand, plaintiff asserts that the duty to protect the Burdman building with reference to excavation of lateral support was non-delegable because of the hazardous and dangerous nature of the work to be performed, and that in any event, the status of the Fulkerson-Schneider relationship, under the facts in evidence, was a question for the jury.

The authorities cited and independent research has led to the conclusion that the law in this state, in this area, is not well defined and no clear rule has been pronounced decisive of this case. Of interest, however, as bearing upon this subject, are the venerable decisions in Larson v. Metropolitan Street Railway Co., 110 Mo. 234, 19 S.W. 416; and Gerst v. City of St. Louis, 185 Mo. 191, 84 S.W. 34, in both of which cases it was held that under the facts there before the court, the owner was responsible for the negligent withdrawal by excavation of lateral support by the owner's contractor. The more modern trend in the law seems to weaken, if not completely withdraw, the orthodox independent contractor defense in this type of case.

■ In Restatement of the Law of Torts 2d, Section 422A, p. 409, it is said:

"One who employs an independent contractor to do work which the employer knows or should know to be likely to withdraw lateral support from the land of another is subject to the same liability for the contractor's withdrawal of such support as if the employer had retained the work in his own hands." [1]

---

1. According to the "Comment" accompanying this quotation, this would apply to the absolute liability for the removal of the natural lateral support to vacant land, regardless of negligence, and also to negligent removal of lateral support adjacent to improved land.

In the Reporter's Notes, Restatement of the Law of Torts 2d, Appendix, Section

This rule is sound and is a reasonable exception to the general independent contractor defense as applied in other areas.

Particularly is this true under the facts in the record. The contract between Schneider and Fulkerson is silent as to the control of the actual foundation work; the dangerous condition of the north wall of the Burdman building was well known to both Schneider and Fulkerson before the work was commenced; the danger incident to the proposed excavation adjacent to the Burdman wall was recognized by Schneider and Fulkerson at the time of the execution of the construction contract, as evidenced by the inclusion in the plans of the optional wall; the Schneiders (both husband and wife) and the Fulkersons, although under no legal obligation to do so, executed the agreement with Burdmans to protect the north wall of the Burdman building and thus can be said to have personally induced Burdman not to take any steps to protect his own property; and the evidence was undisputed that Mr. Fulkerson was physically on the site of the construction several times a day.

■ Under these circumstances, the relationship of Schneider and Fulkerson, the existence of the principal-agent relationship claimed by plaintiff, the negligence of Schneider, if any, the responsibility of Fulkerson therefor, and the damage resulting therefrom, were all questions for the determination of the jury. There was no error in the court giving Instruction No. 9.

Since this case must be retried, one further point raised by plaintiff deserves mention. It complains of trial incidents beginning with the voir dire examination of jurors and ending with closing arguments relating to the existence or non-existence of insurance coverage. Its complaint in substance is, on the one hand, that an attempt was made to show that the Schneiders were without liability insurance, and on the other hand, that the Burdmans were covered by liability insurance, and that both such facts were immaterial to any of the issues in the case. Reference is made to the decision of this court in Stafford, et al. v. Far-Go Van Lines, Inc., Mo.App., 485 S.W.2d 481, decided contemporaneously herewith, where these matters are explored. While this point is not necessary for decision here, such trial incidents, if not material to the issues, should be carefully avoided.

The judgment below is affirmed and the cause remanded.

---

422A, p. 67, the case of Gerst v. City of St. Louis, supra, is cited and reference is made to 33 A.L.R.2d 111.

Another discussion of this area of tort law is found in 1 Am.Jur.2d, Adjoining Landowners Section 21, pp. 704–706.