**UNION ELECTRIC COMPANY, a corporation, Plaintiff-Appellant,**

v.

**The SITEMAN ORGANIZATION, INC. and Pacific Indemnity Company, Defendants-Respondents.**

No. 41748.

Missouri Court of Appeals, Eastern District, Division Two.

April 14, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 15, 1981.

Lashly, Caruthers, Thies, Rava & Hamel, Thomas Cummings, Mark D. Mittleman, St. Louis, for plaintiff-appellant.

Donald L. James, Michael M. Flavin, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for defendants-respondents.

GUNN, Judge.

This appeal arises from a multicount civil action with certain counterclaims in connection with the construction of a bank building in Clayton, Missouri. The central issues concern liability for damages to underground electrical distribution facilities and the interpretation of contract provisions pertaining to the responsibility for such damages. The damages to the· facilities occurred during the construction of the Clayton Bank Building in 1966 and 1967. After a non-jury trial, the trial court found the issues which are the subject of this appeal in favor of the defendants-respondents, the Siteman Organization, Inc. and Pacific Indemnity Company, and against plaintiff-appellant Union Electric Company. We reverse the judgment in certain aspects.

Siteman was the developer of the building project on a site bounded on the west by Central Avenue in Clayton. Bordering on the south property line of the site was an electric power distribution substation owned and operated by Union Electric. Union Electric also had certain underground distribution facilities, a concrete duct ("duct run" or "duct bank") containing electrical cables serving the central business district of Clayton, beneath Central Avenue running along the western property line of the building site.

Substantial excavation for the building foundation was to be undertaken, and Union Electric was concerned about the potential for damage to its substation and duct that might be caused by the removal of the lateral support of the adjacent land. A dispute arose between Union Electric and Siteman about their respective responsibilities for the protection of electrical facilities during the building construction. As a compromise of their differences, Union Electric and Siteman entered into a written agreement (the Contract) dated August 8, 1966, relevant portions of which are:

1. Siteman agrees to construct protective devices for the above-named facilities in accordance with plans prepared by Harold W. Tepper, Professional Engineer ... entitled "Shoring and Bracing Plan and Details for Excavated Banks at Southern and Western Property Lines"....

2. Union Electric shall pay to Siteman the total sum of Forty-five Thousand Five Hundred and No/100ths ($45,500.00) Dollars, in installments, upon receipt of statements rendered by Siteman in accordance with the construction progress.

.   .   .   .   .

4. Siteman agrees and covenants that it will indemnify and hold harmless Union Electric, its successors and assigns from any loss or damage to the property of Union Electric and from and against any and all claims and demands, suits or actions, including court costs and attorneys' fees directly or indirectly resulting from the loss of or damage to property of any other person, firm, or corporation and injury to or death of persons whomsoever, in any manner arising or growing out of the design, construction, maintenance, use, repair, relocation, or removal of said above-described protective devices for the west side or the construction of the before-mentioned building (specifically excluding protective devices for the south side) whether or not said protective devices for the west side are constructed according to all plans and specifications, except such loss, damage, injury or death as may be shown to have been caused by the negligence of Union Electric excluding their participation in the development of the design of the protective devices.

5. Union Electric requires that Siteman shall provide and maintain throughout the entire construction period of this building public liability insurance coverage written by a carrier acceptable to Union Electric. Such coverage shall be written with limits not less than $100,000 per person, $300,000 per accident bodily injury and $500,000 property damage and shall apply to the premises and operations

covered by this Agreement and specifically including contractual liability coverage on the aforestated indemnity obligation of Siteman. A certificate of insurance shall be filed with Union Electric as evidence that the required coverages are in force and such certificate shall contain a clause stating that in the event of a material change or cancellation of the coverage, at least thirty (30) days prior written notice shall be given Union Electric.

Anything herein to the contrary notwithstanding, Siteman's liability to Union Electric by reason of the aforesaid indemnification and hold harmless is restricted and limited to the risks and liability covered by the aforesaid insurance policy to be issued, it being the understanding that Siteman shall have no liability hereunder unless said liability is covered by said policy.

Siteman was already insured with regard to the construction project under policies issued by Pacific Indemnity. In accord with the Contract between them, Siteman presented to Union Electric a certificate of insurance issued by Pacific Indemnity which purported to evidence existence of insurance coverage as required by the Contract. The certificate listed the insured as "The Siteman Organization, Inc."; the location of risk was described as "Union Electric Company Distribution Substation and proposed Clayton Bank Building, Central Avenue, Clayton, Missouri"; the description of risk was "Contractual agreement entered into August _____, 1966, between Union Electric and The Siteman Organization, Inc." The certificate described a "Comprehensive Liability" policy, as well as an "Umbrella Liability" policy providing $1,000,000 excess over the stated limits of the comprehensive policy. In addition, the certificate stated: "Blanket Contractual Liability included in policy conditions." Mr. Oliver Hucker, Union Electric's employee in charge of insurance matters, reviewed the certificate, approved it as evidencing the requisite insurance, and the Contract was signed.

Excavation on the building site commenced in September 1966. The evidence demonstrated that the engineer's plans required by paragraph one of the Contract, for lateral support to the west side of the excavation, were not followed in numerous respects. Beginning in October 1966 loose dirt commenced a glissade down the west edge of the excavation. Subsequently Union Electric's concrete duct became exposed and the supporting earth underneath it began to slough out. The sidewalk along Central Avenue above the duct subsided six to twelve inches and cracks developed and widened in the duct. Union Electric's engineers concluded that the duct was in danger of collapse, and decided to reroute the cables above ground temporarily. Despite preventative measures, the duct ultimately collapsed into the excavation. When construction on the building was completed, Union Electric installed a new concrete duct in Central Avenue. The total net cost of installing the temporary cables and building a replacement duct was $37,637.65.

Between October 1966 and May 1967 Union Electric had paid $6,350.00 to Siteman under the terms of their Contract. Thereafter, it withheld payment of $39,150.00, the remainder of the $45,500.00 it was obligated to pay under the Contract. No money was ever received by Union Electric from either Siteman or Pacific Indemnity to cover the damage to the concrete duct. Pacific Indemnity maintains that the insurance policies provided only "liability" coverage i. e., coverage for injury to *others'*, not the insured's property; hence, so it argues, damage to Union Electric's property is not covered. Pacific Indemnity also argues that coverage is further restricted by a clause in the umbrella policy that makes plaintiff an "insured". Siteman contends that the Contract does not require insurance on Union Electric's property, but that, in any event, since there is no coverage for this type of loss, Siteman has no liability as a consequence of paragraph four of the Contract: "[I]t being the understanding that Siteman shall have no liability hereunder unless said liability is covered by said policy."

Union Electric filed a three count action. Count I asserted a claim of $40,819.40 for unpaid electrical service provided to Siteman and another corporation. Count II sought judgment against Siteman and Pacific Indemnity for $42,252.15 for damages and costs in replacing the duct work. Count III was an alternative claim of $42,252.15 against Siteman for fraudulently misrepresenting the insurance coverage. In a counterclaim to Count II, Siteman requested the $39,150.00 that Union Electric had not paid under the Contract and $4,956.10 for extra work it alleged it had done in connection with the protective devices, totalling $44,106.10. Union Electric denied agreeing to pay for any so-called extra work asserting that any such work was only occasioned by Siteman's failure to follow the original plan in a timely manner.

Judgment on Count I for electrical services was entered in Union Electric's favor, and, that aspect of the case has not been appealed. It is not at issue. Counts II and III were decided against Union Electric, and Siteman's counterclaim was allowed. As Count III is merely an alternative theory of relief, it need not be considered in this appeal in view of our reversing the trial court's ruling on Count II and the counterclaim.

Union Electric presents four points for our review. First, it asserts that the court erred in failing to find that Siteman breached the Contract because of the uncontested evidence showing that Siteman did not construct the protective devices for the duct in accordance with the plans provided for. Second, it argues that the trial court incorrectly found that Siteman fully performed its contractual obligations to indemnify and procure insurance. Union Electric's third point alleges that the court erred in one or more of three findings—(1) Siteman fully performed under the Contract including obtaining the insurance coverage required by paragraph five; (2) the insurance coverage did not cover damage to Union Electric's duct; and (3) defendants did not misrepresent the existence of insurance required by the Contract—because (a) those three holdings are mutually inconsistent, (b) they are not supported by substantial evidence, (c) they conflict with the Contract language requiring Siteman to procure insurance protecting Union Electric's own property, (d) they conflict with the terms of the insurance certificate and policies, and (e) the falsity of any one of the three findings establishes Union Electric's right to recovery. Union Electric's final point of alleged error is that there was insufficient evidence to support the award for "extra work" under Siteman's counterclaim.

■ Our standard of review in this court-tried case is that the judgment will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *In re Marriage of Hagnauer*, 610 S.W.2d 672 (Mo.App.1980); *Wingate v. Griffin*, 610 S.W.2d 417, 418 (Mo.App.1980).

■ At the outset, we cognize that parties may by contract determine responsibility for provision of lateral support of adjoining property. *Royal Indemnity Co. v. Schneider*, 485 S.W.2d 452 (Mo.App.1972).

■ Union Electric's first allegation of error charges that the trial court should have entered a finding of fact that Siteman breached the Contract by not constructing the protective devices in accordance with the plan. It is evident from the record that the plan was not followed in numerous respects, and, to the extent that it is relevant in ruling upon this appeal, we shall consider those deviations to be a breach of the Contract. We note, however, that this evidence alone does not establish Union Electric's right to recover for damage to its property. If this were the sole theory of recovery against Siteman, it would be necessary to establish that such failure to follow the plan proximately caused the damage to the duct. But under the Contract, it is not necessary that this breach be established in order for Union Electric to recover its damages (although such finding may be relevant to the determination of responsibility

for "extra work", as we will discuss in connection with Union Electric's fourth point). Paragraph four of the Contract requires Siteman to indemnify Union Electric regardless of "whether or not said protective devices for the west side are constructed according to all plans and specifications . . . ."

On Count II, the court entered its conclusions of law that: "1. Defendant Siteman fully performed its obligations under the Contract with regard to the procurement of insurance and filing of certificate of insurance"; and "2. Plaintiff [Union Electric] is not entitled to recover against defendant Siteman under Count II." Union Electric's second point charges that these conclusions are erroneous because Siteman (1) did not indemnify it as required in paragraph four of the Contract and (2) did not provide the insurance required by paragraph five.

In reaching its conclusions of law, the trial court made the following factual findings, *inter alia*:

6. The Contract requires defendant Siteman to obtain liability insurance coverage "specifically including contractual liability coverage" with regard to the Contract.

7. Defendant Siteman obtained from defendant Pacific Indemnity Company (defendant Pacific) insurance policies specifically including contractual liability coverage with regard to the Contract.

9. Defendant Siteman furnished plaintiff [Union Electric] with a certificate of insurance which afforded plaintiff the insurance required by the Contract and which complied with defendant Siteman's obligations under the contract.

10. The Contract provides that defendant Siteman's liability to plaintiff by reason of the indemnification therein contained is restricted and limited to the risks and liability covered by the insurance policy to be issued.

Siteman argues, in support of finding number nine above, that Union Electric's insurance expert, Mr. Hucker, testified that Siteman obtained all the insurance that was required by paragraph five of the Contract. The record, however, belies that contention.

Mr. Hucker testified merely that the *certificate* of insurance represented that the insurance requirements had been satisfied. Siteman's argument continues with the theory that because there is in fact no insurance for the particular claimed damage, then it has no obligation to indemnify Union Electric because of the final clause in paragraph four which states:

Anything herein to the contrary notwithstanding, Siteman's liability to Union Electric by reason of the aforesaid indemnification and hold harmless is restricted and limited to the risks and liability covered by the aforesaid insurance policy to be issued, it being the understanding that Siteman shall have no liability hereunder unless said liability is covered by said policy.

We disagree with Siteman's—and the trial court's—interpretation of the Contract. Paragraph four clearly calls for Siteman to indemnify Union Electric for loss or damage to the latter's property. If Siteman had not intended to take responsibility for this type of loss, emendation of text would not have been difficult to word the Contract to that effect. We find nothing in paragraph five that is dissonant with or alleviates this indemnity responsibility. Paragraph five required Siteman to provide and maintain "public liability insurance" during the construction period to "apply to the premises and operations covered by this Agreement and specifically including contractual liability coverage on the forestated indemnity obligation of Siteman. . . ."

Siteman suggests that "liability" insurance denotes coverage only for damage to "third parties" or to "others", and if Union Electric had desired that its own property be insured it should have specified "builder's risk" insurance. We agree that "liability" insurance generally denotes coverage for damage to parties *other than the insured*, third parties in relation to the contract of insurance. *Estrin Construction Co. v. The Aetna Casualty & Surety Co.*, 612 S.W.2d 413 at 426–27 (Mo.App.1981). While Union Electric was, of course, a principal party to the indemnity Contract between it

and Siteman, it was merely an intended third party beneficiary with regard to the insurance contract that was to be procured by Siteman. Paragraph five gives no hint that Union Electric was to be the "Insured" under such insurance policy. And, indeed, the certificate of insurance lists only Siteman under "Name of Insured". Therefore, Union Electric, as a party other than the insured, could properly expect to be reimbursed under a "liability" policy procured by Siteman.

■ Furthermore, if the insurance policies do not cover Union Electric's property damages,[1] as both Siteman and Pacific Indemnity maintain, then Siteman has breached the Contract by failing to obtain the appropriate insurance coverage. Given this breach, it remains that we must determine what effect the final clause of paragraph four has on Union Electric's right to recovery. Siteman insists that because the insurance policy does not provide coverage, it eludes liability by that clause of the indemnity contract. We agree with Union Electric, however, and believe that Siteman's is an untenable interpretation of the contract.

The clause limiting recovery to insurance proceeds contemplates that the proper policy be in force; it speaks of "the aforesaid policy *to be issued* . . . ." (emphasis added). As previously explained, however, Siteman breached the Contract when the policy "to be issued" was not in fact issued. Therefore, we do not believe the clause can reasonably be construed to relieve Siteman of its indemnity obligation in the instant circumstances. To hold otherwise, would frustrate the manifest purpose of the Contract.

■ Siteman raises the contention that Union Electric waived any problem with insurance coverage because Mr. Hucker, its insurance expert, approved the certificate of insurance. Siteman again relies on the term "liability" insurance to argue that Hucker should have realized that there was no coverage for damage to Union Electric's property. As previously observed, however, the certificate lists Siteman as the insured, not Union Electric, and it gives no hint that the actual policies contain exclusionary clauses which may, in effect, negate coverage for damage to the latter's property.[2] The certificate, on its face, represented that insurance satisfying the Contract was in force. We do not believe Hucker's approval of the certificate in any way jeopardizes Union Electric's recovery.

We conclude that Siteman did not fully perform its contractual obligation to procure insurance and that Union Electric should recover its damages. Judgment for Siteman on Count II is reversed and judgment for Union Electric against Siteman in the amount of $37,637.65 is ordered. Union Electric concedes in its brief that against this amount must be offset the sum of $39,150.00 due Siteman on the Contract. Thus, a net judgment in favor of Siteman on Count II for $1,512.35 should be awarded upon remand.

Union Electric's fourth point also relates to the counterclaim in Count II, and it requires discussion. The fourth allegation

1. Construction of the policies is not necessary to decide this appeal. Siteman did not cross-claim against Pacific Indemnity, and we have no need to determine whether the exclusionary clauses relied upon by Pacific Indemnity have the suggested effect.

2. Pacific Indemnity has pointed to a clause in the comprehensive liability policy that excludes coverage for damage to "property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control" in support of its argument that damage to Union Electric's duct is not covered by that policy. No contention has been made that Hucker knew or should have known of this policy exclusion. But even if he did or should have known, there still remain the unlitigated issues of whether the duct was actually in the "care, custody or control" of Siteman, and, if it was, whether the exclusion should not be enforced because it eviscerates the dominant purpose of the transaction—expressly the "Contractual agreement" between Siteman and Union Electric. *See Estrin Construction Co. v. The Aetna Casualty & Surety Co.*, 612 S.W.2d 413 at 427. *See generally,* Mustachio, *Manufacturers' and Contractors' Liability Insurance Policy: The Care, Custody or Control Exclusion Clause*, 6 Houston L.Rev. 359 (1968).

of error is that Siteman's claim for $4,956.10 for "extra work" in connection with construction of the protective devices should not have been allowed "because there was insufficient evidence to show either: (1) that Union Electric had assumed the obligation of compensating Siteman for extra items not included in their Contract, or (2) the identity, amount, authorization or necessity of any such items." The trial court's third finding of fact with regard to Count II and the counterclaim states: "From time to time during the course of defendant Siteman's performance of its obligations under the Contract, defendant Siteman performed extra and additional work, all at the request of plaintiff." Under the counterclaim, the court awarded Siteman $4,956.10 for this work. Siteman has not briefed this point.

The Contract contains no provision concerning "extra work". Thus, the parties were free to reach oral agreements regarding that. We find, however, the evidence insufficient to support a mutual agreement. No evidence was forthcoming that Union Electric agreed to pay for the work in question. There was testimony that a representative for Union Electric was present during discussions relating to certain problems that had arisen and that suggestions on how to proceed had been offered. The correspondence admitted into evidence indicates that there was no mutual agreement on responsibility for the work in question. Thus, recovery by Siteman must be based on a quantum meruit theory—a theory grounded on the principle that no one should be unjustly enriched at the expense of another. *E. g., Vosevich v. Doro, Ltd.,* 536 S.W.2d 752, 756 (Mo.App.1976).

■■■ To avoid unjust enrichment, the law implies a promise to pay for services rendered when the evidence discloses that "one who rendered services did so under circumstances warranting a proper infer-

ence that he expected the recipient of the services to pay for them, and that the latter, in accepting benefit of the services, was or should have been aware that they were being performed with such expectation." *State ex rel. Danforth v. Kansas City Firefighters Local 42,* 585 S.W.2d 94, 97 (Mo. App.1979). Given that the evidence shows that construction of the protective devices had not proceeded in accordance with the plan, and that the "extra" work may very well have been necessitated by the failure to follow the plan, Union Electric would have been unaware that it was expected to pay extra for the work (at least for services performed prior to February 14, 1967, when Siteman's letter to Union Electric stated that the latter should pay for the "additional" work).[3] But, assuming that a promise to pay for "extra work" is implicit, we believe the evidence fails to support the trial court's award. Inasmuch as we have already determined that Siteman is entitled to the full Contract price, the evidence must establish that the claimed amounts were in fact for "extra work" beyond the original requirements of the Contract and that the amounts are accurate. The general contractor testified about certain "extra" items that he billed to Siteman, but they were "extra" only in relation to his agreement with Siteman; there is scant evidence that they were "extra" with regard to the plan specified in the Contract.[4]

Furthermore, the $45,500.00 amount that Union Electric agreed to pay was expressly in *compromise* of its rights and responsibilities. There is no evidence as to the anticipated cost of constructing the protective devices according to the Contract plan. In fact, there is no evidence from which we can itemize the value of the services and materials that the $45,500.00 was paying for. Under all the circumstances, the evidence fails to demonstrate with any probability that Union Electric received the bene-

---

**3.** A statement from the subcontractor to the general contractor indicates that a substantial amount of alleged "extras" were performed in December, 1966.

**4.** From the evidence as to the way the devices were constructed, we must infer that either the general contractor chose not to follow the Contract plan on his own whim, or else his agreement with Siteman called for less substantial, and less costly, devices to be installed.

fit of $4,956.10 worth of services not previously specified in the Contract plan. Therefore, we conclude that the trial court's award on the counterclaim of $4,956.10 for "extra work" is without substantial evidence to support it and must be reversed.

Union Electric's Count III was pleaded in the alternative to Count II. Because we have ruled in Union Electric's favor on Count II, Count III is rendered moot, and alleged errors relating to that count need not be discussed.

The cause is remanded to the trial court for entry of a net judgment for Union Electric on Counts I and II of $39,307.05 ($40,819.40 for Union Electric on Count I minus the $1,512.35 net judgment for Siteman on Count II), for judgment for Union Electric on Siteman's counterclaim for "extra work", and for dismissal of Count III.

PUDLOWSKI, P. J., and WEIER, J., concur.